# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**12-909 consolidated with 12-910, 12-911, 12-912, 12-913, 12-914, 12-915, 12-916, 12-917, 12-918, 12-919, 12-920, 12-921, 12-922, 12-923, 12-924, 12-925, 12-926, and 12-927**

**REBEL DISTRIBUTORS CORP., INC. d/b/a PHYSICIAN PARTNER AND PHARMACY PARTNER (MARY DOUCET)**

**VERSUS**

**LUBA WORKERS' COMP., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 04
PARISH OF LAFAYETTE, NO. 09-00160
SHARON MORROW, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Marc T. Amy, Judges.

**REVERSED AND RENDERED.**

**Harry K. Burdette**
**The Glenn Armentor Law Corporation**
**300 Stewart Street**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Rebel Distributors Corp., Inc. d/b/a Physician Partner and**
    **Pharmacy Partner (Mary Doucet)**

**Jeffrey C. Napolitano**
**Juge, Napolitano, Guilbeau, Ruli & Frieman**
**3320 West Esplanade Avenue North**
**Metairie, LA 70002**
**(504) 831-7270**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
        **LUBA Casualty Insurance Company**
        **Acadiana Plastics Manufacturing, Inc.**

**PETERS, J**.

The matter now before us is one of nineteen consolidated actions, all of which involve a dispute between a pharmaceutical distributor/repackager and an employer/workers' compensation insurer over the payment of costs arising from the dispensing of medications directly to an injured employee by his or her treating physician. In this case, the pharmaceutical distributor is Rebel Distributors Corporation, Inc. (Rebel Distributors), a California corporation; the repackager is Physician Partner and Pharmacy Partner (Physician Partner), which is described in the record as a division of Rebel Distributors and a California based pharmaceutical repackager; the employer is Acadiana Plastics Manufacturing, Inc. (Acadiana); and the workers' compensation insurer is LUBA Casualty Insurance Company (LUBA). The worker compensation judge (WCJ) rendered judgment in favor of Rebel Distributors/Physician Partner and against Acadiana/LUBA, awarding Rebel Distributors/Physician Partner the payment of certain unpaid invoices for medical costs incurred, subject to a statutory limit. Rebel Distributors/Physician Partner appealed the judgment asserting three assignments of error, and Acadiana/LUBA answered the appeal asserting an additional eight assignments of error. For the following reasons, we reverse the WCJ award to Rebel Distributors/Physician Partner and render judgment in favor of Acadiana/ LUBA, dismissing the claims of Rebel Distributors/Physician Partner. In doing so, we find that Rebel Distributors/Physician Partner is not a health care provider with in the contemplation of La.R.S. 23:1021(6) and that the relationship between it and Dr. Thomas Heard and the St. Thomas Clinic is not one of agency. Therefore, Rebel Distributors/Physician Partner has no right of action.

## DISCUSSION OF THE RECORD

The only difference in the parties at interest in the nineteen consolidated cases is that each case involves a different injured worker and a different employer. In the matter now before us, the injured worker is Mary Doucet, and her employer is Acadiana. The parties common to all of the consolidated cases include Rebel Distributors; Physician Partner; the St. Thomas Clinic (Clinic) in Lafayette, Louisiana, which is owned and operated by Dr. Michel Heard, a Lafayette, Louisiana orthopedic surgeon (hereinafter referred to collectively as "Dr. Heard/Clinic); and LUBA.

Rebel Distributors is licensed by the Louisiana Board of Pharmacy as a wholesale distributor of both non-controlled and DEA-controlled substances. The evidentiary record contains a printout from Physician Partner's internet website, which sets forth the particulars of the two business entities and the relationship between them. In that website, Rebel Distributors describes itself as follows:

> Rebel Distributors Corp. is a National Pharmaceutical Distributor licensed and located in Southern California, USA. Founded in 1984, Rebel Distributors Corp. is licensed to distribute pharmaceuticals in over 30 States as well as licensed by the DEA to handle pharmaceuticals that are Schedule 2, 3, 3N, 4 and 5. We are not a full-line wholesaler, rather more of a specialty or promotional wholesale distributor. Through our aggressive approach to purchasing, we strive to provide our customers with exceptional service on the items they need, at the best possible prices. Our goal is to always remain consistent with excellent service and pricing, while continuing to explore new opportunities for our customers.

> Our customer base consists of many different classes of trade within the Pharmaceutical Industry with the majority of our customers falling within the following categories: Retail Pharmacies, Institutional Pharmacies, Urgent Care Clinics, Physicians, Home Healthcare, Retail Drug Chains, Surgery Centers, Dentists, Oncology Groups, Workers' Compensation Clinics, and other licensed wholesalers.

> Rebel has sustained continued growth and success for many years. We believe that strong and mutually beneficial relationships with our customers and suppliers have been and continue to be the key to our

2

ongoing growth and success. While always maintaining excellent business fundamentals and core business strategies, Rebel is committed to exploring new means of distribution, new operational methods and innovative technology to further enhance the continued satisfaction of our customers.

That same website describes Physician Partner as pharmaceutical repackager whose parent company is Rebel Distributors. Its thirty years of experience is "in creating, producing and distributing pharmaceuticals, point-of-care medication and technological dispensing programs for virtually every type of medical professional, community clinic, managed care organization, hospital organization and/or pharmacy." Basically, Rebel Distributors provides Physician Partner with pharmaceuticals in bulk, and Physician Partner then repackages the pharmaceuticals "in 'unit of use' quantities as requested by the physician." Additionally, the website suggests that Physician Partner provides additional services to its customers:

> Utilizing the full scope of our parent company's extensive financial resources and infrastructure, Physician Partner is extremely well positioned to continue to provide the absolute best products, services and solutions in the industry. In addition to providing prepackaged medications, we offer a full array of value added financial services and products ranging from Workers' Compensation Claims Processing and Guaranteed Payment Programs to Full Practice Billing Services and Credit Card Processing Solutions.

Dr. Heard directly dispenses medications to his patients in his practice. However, the pharmaceutical wing of his practice does not operate as a normal pharmacy because Dr. Heard does not supply his patients with a prescription to be presented to a pharmacy. Instead, he dispenses the medicine directly to the patient without writing a prescription.

On June 29, 2007, Physician Partner and Dr. Heard/Clinic entered into an eight-page agreement entitled "PHARMACEUTICAL MANAGEMENT SERVICES AND PRESCRIPTION CLAIMS ASSIGNMENT AGREEMENT."

3

The primary purpose of this agreement is to effect an assignment of full ownership of all "Workers['] Compensation Prescription" transactions arising in Dr. Heard's practice to Physician Partner.[1]  This assignment specifically included "rights to bill and receive payment for the Claim from insurance carriers or self-insured parties." In exchange, Physician Partner guaranteed Dr. Heard/Clinic "payment on all accepted claims."  With regard to what constitutes payment, the agreement states in part that:

> PHYSICIAN PARTNER shall pay CLINIC a monetary sum, in the amount and at such time as set forth on Exhibit D; provided however, that PHYSICIAN PARTNER shall not pay CLINIC an amount greater than CLINIC's Usual and Customary Charge for a dispensed medication.  Furthermore, noting in this Agreement shall require PHYSICIAN PARTNER to pay CLINIC more than the state fee schedule or state public policy amount for a dispensed medication.

Exhibit D is a list of twenty-seven pharmaceuticals setting forth a specific amount to be paid to Dr. Heard/Clinic for each one listed.  Additionally, the final paragraph on Exhibit D explains that "Physician Partner may assign, sell or refer said claims for lien and or litigation at its sole discretion."

With regard to the pharmaceuticals dispensed by Dr. Heard, the agreement provided in Paragraph 7 that:

> PHYSICIAN PARTNER, on behalf of CLINIC, shall order and purchase all Pharmaceuticals required for Pharmaceutical Sales, as reasonably requested by the CLINIC.  The Pharmaceuticals are provided on a consignment basis and remain the property of PHYSICIAN PARTNER until they are dispensed and a claim is created.  PHYSICIAN PARTNER shall perform accounts payable management services for all Pharmaceuticals purchased by CLINIC using funds received from claims assigned prior to sending payment to the CLINIC.

---

[1] On October 24, 2007, the same parties entered into a second agreement bearing the same title, but purporting to apply to "Personal Injury Prescription" transactions between Dr. Heard and his patients.  This contract is not applicable to the issues before us, but is mentioned because it first appeared in the early filings and was implicitly identified as the contract at issue in this litigation.  It was not until November of 2010, that the June 29, 2007 contract was brought forth as the actual contract at issue.

4

Operating under the June 29, 2007 agreement, Physician Partner began providing Dr. Heard/Clinic with all pharmaceutical supplies, and Dr. Heard continued to dispense the medication directly to his patients without writing a prescription. Then, however, instead of billing the patient, the employer, or the employer's workers' compensation insurer, Dr. Heard simply notified Physician Partner that the medication had been dispensed, and Physician Partner forwarded an invoice to the appropriate employer and/or workers' compensation insurer demanding payment. All of the cases now before us involve workers' compensation claims wherein Dr. Heard treated the injured employee and dispensed the medications directly to the injured employee. Additionally, in all of the cases, LUBA is the employer's workers' compensation insurer.

Initially, the June 29, 2007 agreement presented no problems for Physician Partner or Dr. Heard/Clinic because Physician Partner billed LUBA for the medications dispensed by Dr. Heard and LUBA paid Physician Partner directly. However, by correspondence dated August 15, 2008, LUBA informed Physician Partner that it would no longer be paid directly for medications. The letter reads, in pertinent part, as follows:

> This letter is to inform you that LUBA Casualty Insurance Company will no longer reimburse for physician dispensed medications. Please direct our claimants to the nearest retail pharmacy or have them contact us for a suggestion. These actions are being taken to improve our ability to monitor a claimants' medication history and to provide a better service for our workers' compensation policyholders. If you represent a provider we have not notified of our position, we will reimburse for dates of service prior to 9/26/2008, for all notified providers, we will not reimburse bills from your office.

Mary Doucet was one of Dr. Heard's workers' compensation patients, having sustained a compensable injury while employed by Acadiana. During the course of that treatment, Dr. Heard dispensed medications to her directly and

5

assigned the claims for payment by the employer/insurer to Physician Partner under the June 29, 2007 agreement. Some of these prescriptions were assigned after the August 15, 2008 correspondence from LUBA, and LUBA refused to pay Physician Partner for those prescriptions.

When LUBA followed through on its assertions in the August 15, 2008 letter, Physician Partner began legal actions to collect on the accounts it now owned by virtue of the June 29, 2007 agreement. On October 23, 2008, Physician Partner initiated the matter before us by using Ms. Doucet's unpaid invoices and filing a Form 1008 Disputed Claim for Compensation naming Acadiana and LUBA (hereinafter collectively referred to as "Acadiana/LUBA") as defendants.[2] In its pleading, Physician Partner identified itself as a "healthcare provider," and sought payment of outstanding amounts owed for medicines dispensed to Ms. Doucet through Dr. Heard and the Clinic. Additionally, Physician Partner sought recovery of statutory penalties and attorney fees pursuant to the Louisiana Workers' Compensation Act for Acadiana/LUBA's failure to timely pay these amounts.

On February 18, 2009, Acadiana/LUBA answered the allegations and filed peremptory exceptions of no right of action and no cause of action as well. In the answer, Acadiana/LUBA asserted a number of defenses including, but not limited to, the assertions that any medications provided to Ms. Doucet by Dr. Heard were provided without preauthorization; that the charges exceeded the statutory reimbursement schedule; that Acadiana/LUBA had expressly advised Physician Partner that it was not Acadiana/LUBA's choice of pharmacy; and that the assignment of Dr. Heard's/Clinic's right to file for the medical expenses violated the Louisiana Workers' Compensation Act. With regard to the exceptions of no

---

[2] Physician Partner incorrectly named Acadiana as Academic Plastic.

right and no cause of action, Acadiana/LUBA asserted that Physician Partner is not a pharmacy; is not authorized by law to dispense pharmaceuticals to patients; and, therefore, has no cause or right to bring this action under the Louisiana Workers' Compensation Act.

The litigation lay dormant until August 6, 2009, when Acadiana/LUBA filed a motion for summary judgment seeking dismissal of the claim based on the grounds asserted in the exceptions. Additionally, Acadiana/LUBA raised the assertion that Physician Partner is not a "healthcare provider" as defined in La.R.S. 23:1021(6); that Physician Partner never dispensed medication to Ms. Doucet; and that Physician Partner never provided any medical services to her.

On December 10, 2009, Physician Partner asserted for the first time through a supplemental brief opposing the motion for summary judgment that it was the agent of Dr. Heard/Clinic and, as agent, it ordered and purchased all pharmaceuticals requested by Dr. Heard/Clinic and performed account management services for Dr. Heard/Clinic. Being the agent, Physician Partner asserted, it had the authority to file the Form 1008 in Ms. Doucet's case. Despite claiming this agency status, Physician Partner still did not abandon its prior assertion that it, and not Dr. Heard/Clinic, remained the owner of the pharmaceuticals it provided. In support of this new position, Physician Partner attached a one-page document signed on October 26, 2009 and October 28, 2009, or over one year after the filing of the Form 1008, which was executed by Dr. Heard and by a representative of Physician Partner and purporting to confirm the alleged agency relationship, but only as to Paragraph 7 of the June 29, 2007 agreement—the paragraph relating to the consignment agreement. The quote of this paragraph is followed in the document by the following language:

7

WHEREAS, an issue has arisen as to whether Physician Partner is an agent of St. Thomas Clinic/Michel E. Heard, M.D.

WHEREAS, the parties, Physician Partner and St. Thomas Clinic/Michel E. Heard, M.D. desire to clarify and further document the agency relationship between Physician Partner and St. Thomas Clinic/Michel E. Heard, M.D.

NOW THEREFORE, in consideration of the mutual covenants and agreements contained in the Pharmaceutical Management Services and Prescription Claims Assignment Agreement referenced above, the parties acknowledge the following:

1. Physician Partner is an agent of St. Thomas Clinic/Michel E. Heard, M.D.

2. *All of the provisions of the Pharmaceutical Management Services and Prescription Claims Assignment Agreement still remain in full force and effect.*

(Emphasis added.)

On July 15, 2010, an amendment was filed to the initial Form 1008 pleading, purporting to correct the original filing by asserting that the proper-party claimant was not Physician Partner, but Rebel Distributors Corp., Inc. d/b/ad Physician Partner and Pharmacy Partner. In offering this amendment, Rebel Distributors stated that it "adopts the original LDOL-WC-1008 Disputed Claim for Compensation as if copied herein in extenso." Significantly, it did not assert that the new plaintiff was acting as an agent of Dr. Heard/Clinic. On that same day, the WCJ executed an order authorizing the filing of the amending pleading. From this point forward, some pleadings and/or filings continued to be asserted in the name of Physician Partner and others in Rebel Distributors' name. Because of that continued use, we will generally refer to the plaintiff from this point forward as Rebel Distributors/Physician Partner, regardless of the name used in a particular pleading or filing.

8

The very next day, the WCJ held a hearing which resulted in the first ruling on the merits of the pending preliminary matters. On that day, the WCJ orally rendered a judgment granting the exception of no right of action in favor of Acadiana/LUBA. At the same time, the WCJ gave Physician Partner forty-five days in which to cure the defect by amendment that would state a right of action in the party bringing the action. The record before us does not contain a transcript of that hearing, but the written judgment executed by the WCJ on August 12, 2010, contained the following reasons for judgment:

> After considering the argument and briefs submitted by the parties, and in finding that the facts and law are in favor of Employer/Insurer, the Court finds that Physicians [sic] Partner is not a healthcare provider or an agent of a healthcare provider as defined by Section 1021(6) and is not entitled to make a claim for benefits under the Louisiana Workers' Compensation Act.

The judgment was mailed to the litigants on August 30, 2010, and on September 2, 2010, Rebel Distributors/Physician Partner filed a motion for new trial. In that motion, Rebel Distributors/Physician Partner asserted that the August 12, 2010 judgment was contrary to the law and evidence in the record and that it had discovered new evidence which supported reversal of the judgment. The motion did not identify the specific nature of the alleged "new evidence" and did not contain a brief in support of the motion explaining this assertion.

The minutes in the record reflect that a hearing on the motion for summary judgment began on November 17, 2010, but that the WCJ recessed the matter without rendering a decision. Two days later, Rebel Distributors/Physician Partner filed a new pleading seeking to supplement and amend the original Form 1008 for the second time. This amendment added the assertion that Rebel Distributors/Physician Partner was bringing this action "under its registered corporate name acting as agent in the course and scope of Dr. Michel Heard d/b/a

9

St. Thomas Clinic employment" and that "Dr. Michel Heard and St. Thomas Clinic are qualified Health Care providers in the state of Louisiana[.]"

The minutes of the court proceedings of December 15, 2010, reflect only that the motion for new trial was heard and that the WCJ ruled from the bench. We do know from the argument at the subsequent trial on the merits that Rebel Distributors/Physician Partner provided the WCJ with its latest attempt to cure the finding that its prior filings did not rise to the level of stating a right of action in the litigation—a five-page document executed the day before the recessed November 17, 2010 hearing, which attempts to retroactively restructure the entire relationship between it and Dr. Heard.

This document bearing the title "PRINCIPAL — AGENT AGREEMENT" purports to redefine all of the activity entered into between Rebel Distributors and Dr. Heard/Clinic from the execution of the June 29, 2007 contract forward. The preamble to this agreement states the following:

> WHEREAS, In the conduct of its medical practice, Principal provides a service to its workers [sic] compensation patients by maintaining and operating an in-office pharmacy; and
>
> WHEREAS, Agent is in the business of providing pre-packaged prescription drugs and medications (hereinafter "Pharmaceuticals") on a consignment basis in amounts, quantities, manufacturers, dosages and frequencies as directed, and when requested, by Principal in order to facilitate the operation of Principal's in-office pharmacy; and
>
> WHEREAS, Principal desires to retain Agent to provide Pharmaceuticals to Principal on a consignment basis for Principal's use in maintaining and operating its in-office pharmacy; and
>
> WHEREAS, Principal desires to retain Agent to collect the amount due for the Pharmaceuticals following dispensing to workers compensation patients from Principal's in-office pharmacy[.]

Following this preliminary language, the agreement then proceeds to provide that Rebel Distributors/Physician Partner agrees to function as agent for Dr.

Heard/Clinic in supplying the pharmaceutical needs for the medical practice on a consignment basis, with Rebel Distributors/Physician Partner retaining ownership until the medications are dispensed to patients. Once dispensed, the medications become the property of Dr. Heard/Clinic, and "[t]he amount owed from responsible parties with respect to such dispensed Pharmaceuticals shall be collected by Agent acting in the course and scope of Principal's employment as part of its services to Principal pursuant to this Agreement." With regard to the attempt to make the effect of the agreement retroactive, the document provides in Paragraph 18:

> Novation; Effective Date. This agreement is an express novation, and substitution and replacement, of and for the Pharmaceutical Management Services and Prescription Claims Assignment Agreement signed by the parties hereto on June 29, 2007 and all amendments thereto. The Effective Date of this Agreement is June 29, 2007.

We also know from the record before us, particularly the two written judgments arising from the December 15, 2010 hearing, that the WCJ considered, in addition to the motion for new trial, Rebel Distributors/Physician Partner's motion to file the second amendment to the original Form 1008, Acadiana's/LUBA's motion for summary judgment, and Acadiana's/LUBA's exceptions of no right and no cause of action.

In a written judgment executed on February 21, 2011, the WCJ denied the motion for new trial filed by Physician Partner and granted Rebel Distributors'/Physician Partner's motion to file the second supplementation and amendment of the original Form 1008. On that same day, the WCJ executed a separate order granting a January 19, 2011 motion filed by Rebel Distributors/Physician Partner to consolidate eighteen other cases with the instant case. The next day, the WCJ issued a second judgment denying

11

Acadiana's/LUBA's motion for summary judgment, its exception of no cause of action, and its exception of no right of action.

On August 23, 2011, Rebel Distributors/Physician Partner filed a second motion to consolidate this matter with an additional seven cases involving claims against LUBA for nonpayment of prescription medication costs involving other employer/employee relationships. The WCJ granted that motion to consolidate by an order dated September 17, 2011.

Nineteen of these consolidated matters went to trial on the merits beginning on November 2, 2011, including the matter arising from Ms. Doucet's accident. On that morning before trial began, Acadiana/LUBA filed a peremptory exception of res judicata, but only in the matter now before us. Acadiana/LUBA argued that the August 12, 2010 judgment granting its exception of no right of action and dismissing Physician Partner's original claim became final on February 21, 2011, when the WCJ executed the judgment rejecting the motion for new trial. Acadiana/LUBA further argued that by executing the February 21, 2011 judgment, the WCJ had no jurisdiction to accept further filings or to render the February 22, 2011 judgment.

At the close of evidence in the two-day trial, the WCJ took the matter under advisement. On December 9, 2011, the WCJ rendered oral reasons for judgment denying LUBA's exception of res judicata in this case and awarding judgment in favor of Rebel Distributors/Physician Partner for the unpaid prescriptions at issue in all of the consolidated cases, with the specific amounts awarded to be based on the manufacturer's average wholesale price, as calculated by the employer or insurer. Additionally, using La.R.S. 23:1142(B)(1) as authority, the WCJ capped the award for each employee at $750.00. The WCJ further denied the request by

12

Rebel Distributor/Physician Partner for penalties and attorney fees. The WCJ executed a judgment consistent with its oral reasons for judgment on February 16, 2012.

Rebel Distributors/Physician Partner appealed, raising three assignments of errors, all of which apply to all of the consolidated cases:

1.    The Trial Court erred in not granting injured workers in compensable Workers' Compensation claims their right to choice of pharmacy.

2.    The Trial Court erred in limiting payment of the outstanding pharmacy bill's [sic] to $750.00 per Claimant under La.R.S.23:1142.

3.    The Trial Court erred in not granting penalties and attorney fees against LUBA for their failure to pay anything for the reasonable and necessary prescription medication received by Claimants.

Acadiana/LUBA answered the appeal, raising eight assignments of error. Some of these assignments apply only to the matter now before us while others apply to all of the consolidated cases. The assignments of error are as follows:

1.    The Trial Court erred in admitting a second contract executed the day before the hearing on Motion for New Trial which purports to negate the original contract in evidence and in effect at the time of the original hearing in July 2010.

2.    The Trial Court erred in denying LUBA's Exception of Res Judicata.

3.    The Trial Court erred in issuing a second Judgment on February 22, 2011 after signing a Judgment denying Rebel's Motion for New Trial on February 21, 2011.

4.    The Trial Court erred in finding that Rebel was a healthcare provider under Section 1021 (6).

5.    The Trial Court erred in failing to recognize that employer/insurer is entitled to choose the pharmacy to dispense pharmaceuticals.

13

6. The Trial Court erred in failing to find that the contractual relationship between Rebel and Dr. Heard is an illegal assignment in violation of 23:1205.

7. The Trial Court erred in failing to find that the contractual relationship between Rebel and Dr. Heard creates an illegal kickback scheme in violation of 37:1745.

8. The Trial Court erred in failing to find that the procedure which permits each individual packager to arbitrarily set its own AWP without regard to its cost or wholesale price is in violation of 23:1034.2.

Pursuant to La.Code Civ.P. art. 927(B), we notice on our own motion that the pleadings still fail to disclose a right or interest in Rebel Distributors/Physician Partner to institute this suit. That being the case, we need not address the assignments of error further than to grant the exception and dismiss the claims of Rebel Distributors/Physician Partner.

## OPINION

Among the many aspects of the Louisiana Workers' Compensation Law is the recognition that a health care provider is entitled to recover for services rendered and, in some cases, entitled to special remedies not otherwise available in an ordinary open account suit[3] subject to the restrictions placed on the amount of recovery by its provisions. To that end, La.R.S. 23:1021(6) defines a health care provider as follows:

> "Health care provider" means a hospital, a person, corporation, facility, or institution licensed by the state to provide health care or professional services as a physician, hospital, dentist, registered or licensed practical nurse, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist, graduate social worker or licensed clinical social worker, psychiatrist, or licensed professional counselor, and any officer, employee, or agent thereby acting in the course and scope of his employment.

---

[3] Part of the collection remedies include the recovery of penalties and attorney fees where the employer/insurer fails to reasonably controvert the health care provider's claim for the payment of their fee. La.R.S. 23:1201(F)(4).

14

Implicit within this definition is the understanding that to qualify as a health care provider, one must provide health care or professional services to the injured employee.

Louisiana Revised Statutes 23:1203(A) provides that an employer is to provide medical care, including "all necessary drugs" to an injured employee entitled to workers' compensation benefits and, in meeting that obligation, "shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services." Thus, the obligation arising under this statute is between the employer and the health care provider. Additionally, La.R.S. 23:1205(A) provides, in pertinent part, that both "[c]laims or payments due under this Chapter . . . shall not be assignable[.]" With regard to the recovery of penalties and attorney fees for failure of an employer to pay medical expenses, this concept of the health care provider as the appropriate party to enforce that claim carries forward there as well. Louisiana Revised Statutes 23:1201(F)(4) provides "[i]n the event that the *health care provider* prevails on a claim for payment of his fee, penalties as provided in this Section and reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the *health care provider.*" (Emphasis added.)

In this case, neither Physician Partner nor Rebel Distributors/Physician Partner are licensed pharmacists,[4] and neither entity provided health care nor professional services to Ms. Doucet. In fact, there is no direct service provided by either entity to any of the injured workers involved in these consolidated cases. Instead, through their business activity of distributing pharmaceutical products to Louisiana health care providers, they initially negotiated the assignment of a non-

_____

[4] Rebel Distributors Corporation was licensed by the Louisiana Board of Pharmacy as a Wholesaler, License Number 034915, effective October 25, 2007.

assignable right to collect for the health care services provided by Dr. Heard to his patients.

The June 29, 2007 agreement was correctly recognized by the WCJ as a complete transfer of Dr. Heard's/Clinic's rights under the Louisiana Workers' Compensation Act to a non-health care provider. In exchange for the supply of pharmaceuticals on consignment, Dr. Heard/Clinic assigned all rights against third parties for the cost of the medicines Dr. Heard provided to his workers' compensation patients to Physician Partner. Acting pursuant to this assignment, Physician Partner bills and receives payment for the assigned claims from the responsible parties. It then pays Dr. Heard/Clinic for each accepted claim, "a monetary sum, in the amount and at such time as set forth in Exhibit D; provided however, that PHYSICIAN PARTNER shall not pay CLINIC an amount greater that CLINIC'S Usual and Customary Charge for a dispensed medication." This amount, further, is not to exceed "the state fee schedule or state public policy amount for a dispensed medication." The agreement was specific in recognizing that Dr. Heard/Clinic and Physician Partner were operating as "independent contractors" and that "[n]either party shall have nor exercise control or direction over the methods by which the other performs its duties hereunder." Additionally, the agreement made it clear that "[n]either party is or shall be construed or held to be a partner, joint venture, or associate of the other in the conduct of its business."

Notwithstanding this clear language of the relationship between the parties, Rebel Distributors/Physician Partner's December 10, 2009 supplemental

16

memorandum and attachments thereto[5] suggested that at least with relation to the consignment part of the June 29, 2007 agreement, an agency relationship existed between Physician Partner and Dr. Heard/Clinic.

The trial record before us presents a most confusing procedural history, and the minutes of the various hearings are woefully lacking in detail concerning what issue the WCJ considered on a given day in court as well as the disposition of that issue. Our understanding of the record is that on July 16, 2010, the WCJ granted the initial peremptory exception of no right of action filed by Acadiana/LUBA in the response to the original Form 1008, despite having allowed the first amendment to the original Form 1008 the day before. We interpret this action to mean that the WCJ concluded that the change of the plaintiff's identification to Rebel Distributors/Physician Partner was not sufficient to cure the defect raised by the exception of no right of action, and we agree with that conclusion. We also agree that the WCJ had full authority to grant Rebel Distributors/Physician Partner and/or Physician Partner forty-five days to amend the claim to state a right of action. *See* La.Code Civ.P. art. 934. Judgment granting the exception of no right of action was signed by the WCJ on August 12, 2010, and the forty-five days began to run from that day. However, before the forty-five days had run, Rebel Distributors/Physician Partner timely filed a motion for new trial. Additionally, before the motion was ruled upon, Rebel Distributors/Physician Partner filed its second amendment to the original Form 1008 and provided the WCJ with the November 16, 2010 agreement.

As we appreciate the WCJ's actions with regard to the December 15, 2010 hearing and the written judgments arising from that hearing, the WCJ combined all

---

[5] It was to this memorandum that Physician Partner attached the October 26, 2009 one-page document.

of the prior issues with issues not yet heard and disposed of everything at one time. To reconcile the actions of the WCJ in this regard, it is necessary to consider each ruling independently of the other.

We conclude that the WCJ's denial of Physician Partner's motion for new trial was rendered before the consideration of any of the other pending issues. That is to say, the first amendment to the original Form 1008 did not establish that Physician Partner or the newly named plaintiff, Rebel Distributors/Physician Partner was the right party to institute this action. Thus, the WCJ concluded that a distributor or packager of pharmaceuticals who has been assigned the ownership of the claim of a licensed Louisiana physician cannot maintain an action under the Louisiana Workers' Compensation law, because neither is a health care provider as defined in La.R.S. 23:1021(6).

We read the record to conclude that having made that decision, the WCJ then ordered that the second amendment of the original Form 1008 be filed. The WCJ then concluded that the filing and the November 16, 2010 agreement retroactively changed the June 29, 2007 agreement to one of agency, and that the agent (Rebel Distributors/Physician Partner) could bring this action on behalf of its principal (Dr. Heard/Clinic). Declaring the capacity defect cured, the WCJ then rejected the exceptions of no right and no cause of action and the motion for summary judgment filed by Acadiana/LUBA.

As a practical matter, the correctness of the WCJ's original grant of the exception of no right of action is not before us. In attempting to cure the capacity defect raised in the original exception of no right of action, Rebel Distributors/Physician Partner abandoned any effort to maintain its original position by opting to dissolve the business relationship established by the June 29,

18

2007 contract and replace it retroactively with an agency or, as the Louisiana Civil Code suggests, a mandate relationship. We find that this effort fell short of curing the defect originally recognized by the WCJ, and the WCJ should have maintained the original no right of action or raised the exception itself as allowed by La.Code Civ.P. art. 927(B).

"A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." La.Civ.Code art. 2989. The June 29, 2007 contract clearly did not establish a mandate relationship between Physician Partner and Dr. Heard/Clinic. As previously stated, it was an assignment in full ownership of the accounts arising from Dr. Heard's activities in disbursing medicines to his patients. The collection efforts were not to assist Dr. Heard/Clinic, but to assist Physician Partner in collecting what was owed it by Dr. Heard/Clinic because of the consignment provision of the contract. Additionally, Physician Partner reserved the right to reject any assignment in its sole discretion. Such an assignment in the context of workers' compensation matters is prohibited by La.R.S. 23:1205(A).

While the November 16, 2010 agreement provides on the surface that it establishes a principal/agent relationship between Dr. Head/Clinic and Rebel Distributors/Physician Partner, we construe it as nothing more than an attempt to place the title of agency on the continuing aspects of the June 29, 2007 agreement. While the agreement provides that "Agent [Rebel Distributors/Physician Partner], acting in the course and scope of Principal's [Dr. Heard/Clinic] employment, shall provide Pharmaceutical Purchasing, Pharmaceutical Sales, Pharmaceutical Billing and Pharmaceutical Collection services" and the language of the agreement speaks in terms of principal/agent, the actual obligations of both parties are no different

19

from those established in the June 29, 2007 agreement. Rebel Distributors/Physician Partner agrees to satisfy the pharmaceutical needs of Dr. Heard/Clinic, but under basically the same consignment agreement as was set forth in the June 29, 2007 agreement. Additionally, while Rebel Distributors/Physician Partner agrees that it "shall be solely responsible for preparing and timely filing all claim forms with the responsible party and for prosecuting such claims through payment in full[,]" the contract is completely silent concerning the particulars of how the recovered claims will be disbursed. While attempting to portray Rebel Distributors/Physician Partner as an agent, the agreement contains a section devoted entirely to the representations and warranties which Dr. Heard/Clinic owes Rebel Distributors/Physician Partner, including the agreement to:

> [D]efend, indemnify and hold Agent harmless from and against any claim, injury, demand or judgment based on tort or other ground (including warranty of merchantability) arising out of sale, compounding, and dispensing of any Pharmaceuticals including, without limitation, payment of all costs and reasonable attorney's fees.

The agreement contains no similar provision addressing representations and warranties owed Dr. Heard/Clinic by Rebel Distributors/Physician Partner.

Having expressed doubts concerning the effect of the November 16, 2010 agreement, we find that we do not have to determine whether it establishes a valid principal/agency relationship because, even if it does, it is not applicable to the matter now before us. The parties to the agreement assert in the agreement that it is an "express novation" which is enacted to substitute and replace the June 29, 2007 agreement and that it is to be applied retroactively to June 29, 2007. In other words, it is to be construed as if the June 29, 2007 agreement never existed.

"Novation is the extinguishment of an existing obligation by the substitution of a new one." La.Civ.Code art. 1879. Additionally, La.Civ.Code art. 1881 provides that:

> Novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation. *If any substantial part of the original performance is still owed, there is no novation.*
>
> Novation takes place also when the parties expressly declare their intention to novate an obligation.
>
> *Mere modification of an obligation, made without intention to extinguish it, does not effect a novation.* The execution of a new writing, the issuance or renewal of a negotiable instrument, or the giving of new securities for the performance of an existing obligation are examples of such a modification.

(Emphasis added.)

In the matter before us, a substantial part of the original performance required under the June 29, 2007 agreement is still owed by Rebel Distributors/Physician Partner. Additionally, the entire effort to create the principal/agent relationship is an attempt to modify the original obligation without extinguishing it. Thus, the November 16, 2010 agreement cannot novate the June 29, 2007 agreement.

Furthermore, La.Civ.Code art. 1883 provides that "[n]ovation has no effect when the obligation it purports to extinguish does not exist or is absolutely null." In this case, the WCJ had already concluded that Rebel Distributors/Physician Partner had no right of action in this litigation.

Because we find that the November 16, 2010 cannot act retroactively to breathe new life into the attempt by Rebel Distributors/Physician Partner to collect an assigned workers' compensation medication claim, we must also conclude that its efforts to amend the original Form 1008 to state a cause of action failed. Thus, we reverse the judgment of the WCJ and reinstate the judgment granting the

21

peremptory exception of no right of action. Based on this finding, we need not address the remaining assignments of error of either party.

## DISPOSITION

For the foregoing reasons, we reverse the judgment of the workers' compensation judge and render judgment in favor of Acadiana Plastics Manufacturing, Inc. and LUBA Casualty Insurance Company granting their peremptory exception of no right of action and dismissing the claims of Rebel Distributors Corporation, Inc. d/b/a Physician Partner and Pharmacy Partner. We assess all costs of this appeal against Rebel Distributors Corporation, Inc. d/b/a Physician Partner and Pharmacy Partner.

**REVERSED AND RENDERED.**