WEIMER, Justice.
IjA pharmaceutical distributor/repacka-ger seeks review of an appellate court decision that reversed a decision of the Louisiana Office of Workers’ Compensation Administration, which had awarded certain unpaid invoices for physician-dispensed medications, subject to a statutory limit, in favor of the distributor/repacka-ger. The court’s reversal was based on a finding that the distributor/repackager, being neither a health care provider nor an *828 agent of a health care provider, did not have a right of action. After considering the applicable law, we find the anti-assignment language of La. R.S. 23:1205(A) does not prohibit the assignment of a health care provider’s claims to a third party, the express contractual novation was effective, and an agent can statutorily be considered a health care provider based on the definition contained in La. R.S. 23:1021(6). Accordingly, we reverse the court of appeal’s decision and remand the matter to the court of appeal for further consideration.
[ ?FACTS AND PROCEDURAL HISTORY
Rebel Distributors Corporation, Inc. (Rebel) is a California corporation licensed by the Louisiana Board of Pharmacy as a wholesale distributor of pharmaceuticals.[1] Doing business as Physician Partner and Pharmacy Partner (Partner), Rebel repackages bulk pharmaceuticals into “unit of use” quantities, as requested by physicians. For ease of reference, Rebel d/b/a Partner will be referred to as Rebel.
On June 29, 2007, Rebel and the St. Thomas Clinic (Clinic), which is owned and operated by Dr. Michel E. Heard, an orthopedic surgeon, entered into an agreement entitled “Pharmaceutical Management Services and Prescription Claims Assignment Agreement” (2007 Agreement). Unless otherwise requested by his patients, Dr. Heard dispenses medication directly to his patients through an in-office pharmacy program with pharmaceuticals provided by Rebel. Pursuant to the 2007 Agreement, the Clinic assigned full ownership of all workers’ compensation prescription transactions arising in Dr. Heard’s practice to Rebel, specifically including its “rights, title and interest in and to the Claim including ... rights to bill and receive payment for the Claim from insurance carriers or self-insured parties.” As consideration for the assignment, Rebel guaranteed the Clinic “payment on all accepted claims.” With regard to what constitutes payment, paragraph 6 of the 2007 Agreement states, in pertinent part, that:
PHYSICIAN PARTNER shall pay CLINIC a monetary sum, in the amount and at such time as set forth in Exhibit D; provided however, that PHYSICIAN PARTNER shall not pay CLINIC an amount greater than CLINIC’S Usual and Customary Charge for a dispensed 13medication. Furthermore, nothing in this Agreement shall require PHYSICIAN PARTNER to pay CLINIC more than the state fee schedule or state public policy amount for a dispensed medication.
Exhibit D is a list of pharmaceuticals setting forth a specific amount to be paid to Clinic for each. Additionally, the final paragraph of Exhibit D explains that “Physician Partner may assign, sell or refer said claims for lien and or litigation at [its] sole discretion.” With regard to the pharmaceuticals dispensed by Dr. Heard, Paragraph 7 of the 2007 Agreement provides that:
PHYSICIAN PARTNER, on behalf of CLINIC, shall order and purchase all Pharmaceuticals required for Pharmaceutical Sales, as reasonably requested by the CLINIC. The Pharmaceuticals are provided on a consignment basis and remain the property of PHYSICIAN PARTNER until they are dispensed and *829 a claim is created. PHYSICIAN PARTNER shall perform accounts payable management services for all Pharmaceuticals purchased by CLINIC using funds received from claims assigned prior to sending payment to the CLINIC.
Pursuant to the 2007 Agreement, Rebel began providing pharmaceuticals to Dr. Heard. Upon receipt of notice from Dr. Heard that Rebel-provided pharmaceuticals had been dispensed directly to an injured employee, Rebel forwarded an invoice to the appropriate employer and/or workers’ compensation insurer demanding payment.
Mary Doucet (Doucet), who was injured during the course of her employment with Acadiana Plastics Manufacturing, Inc. (Acadiana), sought treatment with Dr. Heard. During the course of her treatment, Dr. Heard directly dispensed medications to Doucet. Instead of personally billing Doucet, Acadiana, or Acadiana’s workers’ compensation insurer — LUBA Casualty Insurance Company (LUBA)— for the medication, Dr. Heard notified Rebel that the medication had been dispensed, and Rebel forwarded an invoice to Acadiana or LUBA demanding payment for the pharmaceuticals dispensed by Dr. Heard. By letter dated August 15, 2008, LUBA notified Rebel that Rebel would no longer be paid directly for medications dispensed |4by Dr. Heard after September 26, 2008, and instructed Rebel to direct LUBA-covered claimants to the nearest retail pharmacy for their pharmaceutical needs. Despite the notice, Dr. Heard continued to directly dispense medication to Doucet for which LUBA refused to pay Rebel.
On October 28, 2008, Rebel, identifying itself as a “health care provider,” filed a disputed claim for compensation with the Louisiana Office of Workers’ Compensation Administration (OWC) against LUBA and Acadiana (defendants) for payment of outstanding invoices owed for pharmaceuticals dispensed to Doucet through Dr. Heard, seeking penalties and attorney fees for the defendant’s failure to timely pay these amounts.[2] The defendants filed an *830 exception, raising the objections Rof no right of action and no cause of action, and a motion for summary judgment, arguing that Rebel was not acting as a health care provider as defined by La. R.S. 23:1021(6) in connection with the medication dispensed by. Dr. Heard to Doucet. The OWC orally sustained the exception of no right of action, but allowed Rebel time to amend its claim to establish a right of action.
In October 2009, Dr. Heard and a Rebel representative executed a document to clarify and confirm the existence of an agency relationship between Rebel and the Clinic. In connection with paragraph 7 of the 2007 Agreement, the 2009 document provided:
WHEREAS, an issue has arisen as to whether Physician Partner is an agent of St. Thomas Clinic/Michel E. Heard, M.D.
WHEREAS, the parties, Physician Partner and St. Thomas Clinic/Michel E. Heard, M.D. desire to clarify and further document the agency relationship between Physician Partner and St. Thomas Clinic/Michel E. Heard, M.D.
NOW THEREFORE, in consideration of the mutual covenants and agreements contained in the Pharmaceutical Management Services and Prescription Claims Assignment Agreement referenced above, the parties acknowledge the following:
1. Physician Partner is an agent of St. Thomas Clinic/Michel E. Heard, M.D.
2. All of the provisions of the Pharmaceutical Management Services and Prescription Claims Assignment Agreement still remain in full force and effect.
Subsequently, on November 16, 2010, Rebel and Dr. Heard d/b/a the Clinic executed a document bearing the title “Principal — Agent Agreement” (2010 Agreement). The preamble to this agreement states: 1 (WHEREAS, In the conduct of its medical practice, Principal provides a service to its [workers’] compensation patients by maintaining and operating an in-office pharmacy; and
WHEREAS, Agent is in the business of providing pre-packaged prescription drugs and medications (hereinafter “Pharmaceuticals”) on a consignment basis in amounts, quantities, manufacturers, dosages and frequencies as directed, and when requested, by Principal in order to facilitate the operation of Principal’s in-office pharmacy; and WHEREAS, Principal desires to retain Agent to provide Pharmaceuticals to Principal on a consignment basis for *831 Principal’s use in maintaining and operating its in-office pharmacy; and WHEREAS, Principal desires to retain Agent to collect the amount due for the Pharmaceuticals following dispensing to [workers’] compensation patients from Principal’s in-office pharmacy!.]
Following that preliminary language, the 2010 Agreement provides that Rebel agrees to function as agent for the Clinic in supplying the pharmaceutical needs for the medical practice on a consignment basis with Rebel, retaining ownership until the medications are dispensed to patients. At the time of dispensation, the medications become the property of the Clinic, and “[t]he amount owed from responsible parties with respect to such dispensed Pharmaceuticals shall be collected by Agent acting in the course and scope of Principal’s employment as part of its services to Principal pursuant to this Agreement.” In paragraph 18, the 2010 Agreement further provides:
Novation; Effective Date. This agreement is an express novation, and substitution and replacement, of and for the Pharmaceutical Management Services and Prescription Claims Assignment Agreement signed by the parties hereto on June 29, 2007 and all amendments thereto. The Effective Date of this Agreement is June 29, 2007.
Through a course of filings, Rebel amended its claim to add Rebel d/b/a Physician Partner as proper party-plaintiff and to further assert the existence of an agency relationship between Rebel and the Clinic pursuant to the 2009 document and the 2010 Agreement, the last of which expressly novated the 2007 Agreement. Ultimately, the defendants’ exception was overruled by the OWC; their motion for 17summary judgment was denied; and the matter proceeded to trial. After the trial, judgment was rendered in favor of Rebel, awarding payment of the unpaid invoices for physician-dispensed medications, subject to the statutory limit of $750 per injured employee set forth in La. R.S. 23:1142(B)(1).[3] Rebel’s claim for penalties and attorney fees was denied.
Rebel appealed, seeking review of the portion of the OWC’s decision that limited its recovery to $750 per injured employee. LUBA answered the appeal, urging, among other things, that the OWC erred in finding that Rebel was a health care provider pursuant to La. R.S. 23:1021(6) and in failing to find that the contractual relationship between Rebel and the Clinic is an illegal assignment in violation of La. R.S. 23:1205(A).
On its own motion, the appellate court found that the pleadings failed to disclose a right or cause of action[4] under the Louisiana Workers’ Compensation Laws in favor of Rebel as it is not a health care provider or an agent of a health care provider within the meaning La. R.S. *832 23:1021(6). Neither Rebel nor Partner is a licensed pharmacist; neither provided health care or professional services to any of the injured employees in the consolidated actions. The appellate court further found |sthat the 2007 Agreement did not establish an agency relationship[5] and that the assignment of the accounts by the Clinic to Rebel was prohibited by La. R.S. 23:1205(A). As to the 2010 Agreement, the appellate court found that the obligations of both parties in the 2007 Agreement and the 2010 Agreement were not different; therefore, the original obligation was not extinguished as required by La. C.C. arts. 1879 and 1881. Accordingly, the 2010 Agreement did not novate the 2007 Agreement. The court further reasoned that pursuant to La. C.C. art. 1883, the 2007 Agreement, as an absolute nullity, was incapable of being novated. Therefore, the court of appeal concluded that Rebel could not cure the defect in its pleadings by entering into the 2010 Agreement and seeking to have it applied retroactively.[6] Based on these findings, the OWC’s decision was reversed by the appellate court, and judgment was entered in favor of the defendants, dismissing Rebel’s claims on the ground of no right of action. Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Mary Doucet) v. LUBA Workers’ Comp., 12-909 (La.App. 3 Cir. 3/6/13), 129 So.3d 80, 2013 WL 811969; see cases cited supra note 2.
Rebel argues that the court of appeal erred in holding: (1) La. R.S. 23:1205(A) prohibits a health care provider from assigning the right to collect unpaid invoices for medication provided to Dr. Heard by Rebel and dispensed by Dr. Heard to a workers’ | compensation patient; (2) pursuant to La. R.S. 23:1021(6), Rebel could not be considered the Clinic’s agent for the purpose of such collections since it was not a health care provider; and (3) the 2010 Agreement did not constitute a valid novation of the 2007 Agreement. We granted Rebel’s writ application in these consolidated cases to initially consider whether La. R.S. 23:1205(A) prohibits an assignment by a health care provider to a third party of the right to administratively bill for and collect payment. Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Mary Doucet) v. LUBA Workers’ Comp., 13-0749 (La.6/14/13), 118 So.3d 1092.
DISCUSSION
Generally, an action can be brought only by a person having a real and actual interest which he asserts. See La. C.C.P. art. 681. “When the facts alleged in the petition provide a remedy under the law to someone, but the plaintiff who seeks the relief is not the person in whose favor the law extends the remedy, the proper objection is no right of action, or want of interest in the plaintiff to institute the suit.” Howard v. Administrators of Tulane Educational Fund, 07-2224, p. 16 (La.7/1/08), 986 So.2d 47, 59, citing 1 Frank L. Ma-raist & Harry T. Lemmon, Louisiana Civil *833 Law Treatise: Civil Procedure § 6.7, 121 (1999). The objection is urged through the peremptory exception of no right of action raised by the defendant or noticed by the court on its own motion, in either the trial or appellate court. See La. C.C.P. arts. 927 and 2168. “The function of the peremptory exception is to have the plaintiffs action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action.” La. C.C.P. art. 923. “On the trial of the peremptory exception [of no right of action] pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any |inof the objections pleaded, when the grounds thereof do not appear from the petition.” La. C.C.P. art. 931.
In the instant case, the appellate court noticed the failure of the plaintiff to disclose a right or interest to institute this suit and ruled sua sponte. See Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Mary Dou-cet), 12-909 at 19, 129 So.3d at 88, citing La. C.C.P. art. 927(B).[7] An appellate court considering an exception of no right of action should focus on whether the particular plaintiff has a right to bring the suit and is a member of the class of persons that has a legal interest in the subject matter of the litigation, assuming the petition states a valid cause of action for some person. See Hood v. Cotter, 08-0215, 08-0237, p. 17 (La.12/2/08), 5 So.3d 819, 829. Where doubt exists regarding the appropriateness of an objection of no right of action, it is to be resolved in favor of the plaintiff. Teachers’ Retirement System of Louisiana v. Louisiana State Employees’ Retirement System, 456 So.2d 594, 597 (La.1984).
The determination of whether a plaintiff has a legal right to bring an action raises a question of law, which requires de novo review.[8] See Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 06-0582, p. 9 (La.11/29/06), 943 So.2d 1037, 1045; Gibbs v. Delatte, 05-0821, p. 6 (La.App. 1 Cir. 12/22/05), 927 So.2d 1131, 1135, writ denied, 06-0198 (La.4/24/06), 926 So.2d 548. Applying this standard of review to the instant matter, we will examine the law de novo to determine whether under the facts of these cases Rebel, a repackager of pharmaceuticals dispensed by a health care provider to an injured employee, has set l^forth a right of action against the injured employee’s employer or its workers’ compensation insurer.
The OWC has jurisdiction over the claims of a health care provider for payment of fees for medical services provided. See La. R.S. 23:1310.3(F);[9] La. R.S. 23:1201(F)(3) and (4);[10] see also La. R.S. *834 23:1142 (addressing the approval of health care providers and the fees charged by them); La. R.S. 23:1205(B) (providing for health care benefits reimbursement). Furthermore, properly licensed health care providers may “dispense drugs to their patients in the practice of their respective professions” that have been provided by a wholesale drug distributor/re-packager. See 112La. R.S. 37:1201(B)[11] and La. R.S. 37:3461-3482.[12] Workers’ compensation laws do not preclude health care providers from providing such service to injured employees. Therefore, a health care provider has a right to pursue an administrative proceeding with the OWC for physician-dispensed pharmaceuticals obtained by injured employees.
Initially, contending to be a health care provider, Rebel filed suit for unpaid physician-dispensed medication. None of the statutes referenced in the preceding paragraph or La. R.S. 23:1209(0)[13] expressly prohibit the assignment of a cause of action for a health care provider’s claim arising under the workers’ compensation |islaws, nor do the other provisions applicable to health care providers in Part I, “Scope and Operation,” Subpart G entitled “Attorneys and Physicians.” See La. R.S. 23:1141-1143. These provisions are silent in all respects on the subject of assignment.
Although Louisiana does not have a statutory provision that explicitly provides a health care provider .with the right to assign to a third party a claim for pharmacy related services, the Louisiana Civil Code states that “[a]ll rights may be assigned, *835 with the exception of those pertaining to obligations that are strictly personal.” La. C.C. art. 2642. Accordingly, “incorporeal rights, except for strictly personal obligations, are generally assignable.” La. C.C. art. 2642, Revision Comments-1993, comment (a). Nonetheless, “a right cannot be assigned where assignment is prohibited by law.” La. C.C. art. 2642, Revision Comments-1993, comment (c); see Conerly Corporation v. Regions Bank, 668 F.Supp.2d 816, 823 (E.D.La.2009) ([A] party “may assign any rights that it had at the time of the assignment as long as they are not ‘strictly personal’ or the assignment is not otherwise proscribed by law.”). Nothing in the record suggests that Dr. Heard’s right to collect payment from LUBA for medications dispensed to Dou-cet is a strictly personal obligation as defined by La. C.C. art. 1766, which provides:
An obligation is strictly personal when its performance can be enforced only by the obligee, or only against the obligor.
When the performance requires the special skill or qualification of the obli-gor, the obligation is presumed to be strictly personal on the part of the obli-gor. All obligations to perform personal services are presumed to be strictly personal on the part of the obligor.
When the performance is intended for the benefit of the obligee exclusively, the obligation is strictly personal on the part of that obligee.
114There is nothing unique about the workers’ compensation process that prevents a third party, such as Rebel, from collecting the fees for medications properly dispensed by an injured employee’s health care provider.
We next consider whether the assignment in these cases is not otherwise prohibited by law. See La. C.C. art. 2642, Revision Comments-1993, comment (c); Conerly Corporation, 668 F.Supp.2d at 823. The appellate court’s sustaining of an exception of no right of action sua sponte was based partially on the assignment prohibition found in La. R.S. 23:1205(A), which provides:
Claims or payments due under this Chapter shall have the same preference and priority for the whole thereof against the assets of the employer as is allowed by law for any unpaid wages of the laborer; and shall not be assignable, and shall be exempt from all claims of creditors and from levy or execution or attachment or garnishment, except under a judgment for alimony in favor of a wife, or an ascendant or descendant. [Emphasis added.]
Interpreting this provision, the court of appeal found that the Clinic could not assign to Rebel its right to collect the sums due for medication dispensed by Dr. Heard. According to Rebel, the court of appeal misinterpreted La. R.S. 23:1205(A). Rebel urges that La. R.S. 23:1205(A) forbids injured employees from assigning their claims or payments due, but does not prohibit assignment by health care providers of their right to bill and collect payment for services and medications. The defendants, on the other hand, argue that assignment prohibition in La. R.S. 23:1205(A) is not limited to injured employees; therefore, the prohibition applies to everyone.
The resolution of this issue requires us to determine the meaning and intent of La. R.S. 23:1205(A). The function of statutory interpretation and the construction to be given to legislative acts rests with the judicial branch of the government. Livingston Parish Council on Aging v. Graves, 12-0232, pp. 3-4 (La.12/4/12), 105 So.3d 683, 685. The rules of statutory construction are designed to ascertain and |1fienforce the intent of the *836 legislature. Id. Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent, as well as the reason or reasons which prompted the legislature to enact the law. Id.
The starting point in the interpretation of any statute is the language of the statute itself. Graves, 12-0232 at 4, 105 So.3d at 685. Words and phrases shall be read in their context and shall be construed according to the common and approved usage of the language. Id.; La. R.S. 1:3. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. Id. When the wording of a section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. Id.; La. R.S. 1:4.
When the meaning of a statute cannot be ascertained by the application of La. R.S. 1:3, et seq., the court shall consider the intent of the legislature as best evidenced by the text of a law. Id.; See La. R.S. 24:177(A) and (B)(1). The occasion and necessity for the law, the circumstances under which it was enacted, concepts of reasonableness, and contemporaneous legislative history may also be considered in determining legislative intent. Graves, 12-0232 at 4-5, 105 So.3d at 685; La. R.S. 24:177(B)(2)(a). The legislature is presumed to have enacted an article or statute in light of the preceding law involving the same subject matter and court decisions construing those articles or statutes. Id.; La. R.S. 24:177(C).
The statute must, therefore, be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it. Champagne v. American Alternative Insurance Corporation, 12-1697, p. 6 (La.3/19/13), 112 So.3d 179, 183. Courts should give effect to all parts 11fiof a statute and should not adopt a statutory construction that makes any part superfluous or meaningless, if that result can be avoided. Id.
Louisiana R.S. 23:1205(A) clearly states that “[c]laims or payments due” under the workers’ compensation laws “shall not be assignable.” However, the anti-assignment phrase cannot be read in insolation; rather, the statute must be read as a whole. See La. R.S. 1:3.[14] The first part of Section 1205(A) states that an injured employee’s claim under the workers’ compensation laws against an employer has “the same preference and priority against the assets of the employer” as an employee’s claim for unpaid wages against the employer. See La. R.S. 23:631, et seq. (pertaining to payment of employees). Thus, the phrase “[c]laims or payments due under this Chapter” in the first part of Section 1205(A) refers to payments due to the injured employee, not simply any claim or payments due pursuant to the workers’ compensation laws. Such an interpretation is consistent with the legislature’s excepting of a support or “alimony” judgment in favor of a spouse or relative in connection with the exemption provided for workers’ compensation claims or payment due from the “claims of creditors and from levy or execution or attachment or garnishment.” La. R.S. 23:1205(A). The reference to alimony found in the latter part of La. R.S. 23:1205(A), supra, reveals *837 that the exception is obviously directed at claims belonging to the injured employee.[15] When the anti-assignment phrase is read in context, it is clear that the legislature’s reference to “claim or payments due” in La. R.S. 23:1205(A) is to that of the injured employee. Such assignments by an |17injured employee are prohibited, whether beneficial to the injured employee or not. See Dupre v. Consolidated Under-uniters, 99 So.2d 522, 525 (La.App. 1 Cir. 1957).
Notably, prior jurisprudence addressing La. R.S. 23:1205 has consistently recognized that the prohibition against assignment of claims or payments due prevents an injured employee from assigning his or her claims or payments due. See LeBleu v. Deshotel, 628 So.2d 1227, 1228 (La.App. 3 Cir.1993);[16] Schoemann v. Aetna Life & Casualty Company, 556 So.2d 77, 80 (La. App. 4 Cir.1989), unit denied, 559 So.2d 1345 & 1380 (La.1990);[17] Globe Indem. Co. v. Toye Bros. Auto & Taxicab Co., Inc., 14 La.App. 142, 129 So. 234, 237 (LaApp.Orleans 1930);[18] see also Fagon v. Lafayette Bureau of Credit Control, Inc., 94-1422 (La.App. 3 Cir. 5/10/95), 657 So.2d 234, 235, unit denied, 95-1373 (La.10/6/95), 661 So.2d 464 (Thibodaux, J., dissenting, stating La. R.S. 23:1205 “is an explicit pronouncement of the legislative will to protect state workers’ compensation benefits”); Dupre, 99 So.2d at 525.[19]
*838 |1RIn connection with the assignments by the injured employees in the cases referenced in the preceding paragraph, La. R.S. 23:1205(A) has been construed as protecting the injured employees’ benefits by prohibiting the injured employees from assigning away their claims or payments due so as to prevent the loss of their right to seek redress for their work-related injuries. Such an interpretation is consistent with the purpose of the workers’ compensation laws. See La. R.S. 28:1020.1(B).[20] The issue of whether a health care provider may assign a claim to a third party non-health care provider was not considered by the courts in any of the referenced cases. However, the scope of the workers’ compensation laws and the public policy that drives those laws do not prohibit an assignment by a health care provider. | ^Forbidding a health care provider from assigning the right to collect payments in no way protects the injured employee. Furthermore, the manner in which a health care provider chooses to collect payments is a business decision. The reality of modern medicine is that health care providers in many instances elect to concentrate on patient care and rely on others who specialize in the complex area of billing and collection for those services. If La. R.S. 23:1205(A) were interpreted to interfere with the health care provider’s decision in this regard, the long-term effect could be detrimental to injured employees, as those health care providers who assign their accounts receivable to third parties for collection may choose not to offer medical services to injured employees.
The placement of La. R.S. 23:1205 in' the workers’ compensation laws reinforces such an interpretation of La. R.S. 23:1205(A). Section 1205 is found in Part II of the workers’ compensation laws, relating to “Benefits,” which primarily governs the relationship between the injured employee, the employer, and the workers’ compensation insurer. For instance, the “Benefits” part includes statutes governing: 1) the time and place of payment of benefits; 2) the failure to timely pay benefits; 3) the failure to pay benefits; 4) the maximum and minimum amounts of benefits payable; 5) the acts of the employer or insurer that do not constitute an admission of liability, 6) the duty to furnish medical and vocational rehabilitation expenses; 7) the deduction of voluntary payments not due to the employee from benefits; 8) rival claimants; 9) misrepresentations concerning benefit payments; 10) the employer’s inquiry into the employee’s previous injury claims; 11) filing delays; 12) the duty to *839 report fraud; IB) the duty to furnish burial expenses; and 14) the medical expense offset. See La. R.S. 23:1201-1212. By contrast, as previously recognized, physicians and health care providers are specifically addressed in Part I, |2n“Scope and Operation,” Subpart G, entitled “Attorneys and Physicians.” See La. R.S. 23:1141— 1148. Subpart G does not prohibit the assignment of a health care provider’s claim against the injured employee’s employer or its workers’ compensation insurer.
Accordingly, we find that La. R.S. 23:1205(A) provides for the protection of an injured employee by preventing him from encumbering his future stream of income by way of assignment. We further conclude that La. R.S. 23:1205 does not govern the assignability of claims belonging to or payments due a health care provider. Therefore, the appellate court erred in concluding that the 2007 Agreement was an absolute nullity as a violation of the anti-assignment provision in La. R.S. 23:1205(A), precluding a valid novation of the obligations contained therein. See La. C.C. art. 1883.[21]
However, in light of the 2010 Agreement, Rebel no longer seeks to enforce the 2007 Agreement. Instead, Rebel urges that the 2010 Agreement replaced the 2007 Agreement retroactively. Therefore, we must determine whether the appellate court erred in determining that a novation of the 2007 Agreement had not occurred.
La. C.C. art. 1881 provides:
Novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation. If any substantial part of the original performance is still owed, there is no novation.
Novation takes place also when the parties expressly declare their intention to novate an obligation.
Mere modification of an obligation, made without intention to extinguish it, does not effect a novation. The execution of a new writing, the issuance or renewal of a negotiable instrument, or the giving |21of new securities for the performance of an existing obligation are examples of such a modification.
In pertinent part, comment (c) of the Revision Comments-1984 to La. C.C. art. 1881 provides:
Novation takes place when a new obligation is substituted for an old one, which is thus extinguished. Such a substitution occurs whenever at least one of the basic elements of the original obligation is changed. The basic elements of an obligation are the parties to it, its object, and its cause.
However, “[u]nder the second Paragraph of ... Article [1881], even if a new performance or a new cause is not substituted, a novation takes place if there is an express declaration of the parties to that effect.” La. C.C. art. 1881, Revision Comments-1984, comment (d); see 5 Saul Lit-vinoff, Louisiana Civil Law Treatise: The Law of Obligations § 17.24 at 554 (2d ed.2001), which explains:
The Louisiana Civil Code makes it quite clear that novation takes place also when the parties expressly declare their intention to novate an obligation. Thus, the subjects may decide to introduce into their obligation a change that, by itself, amounts to a mere modification to *840 which no extinctive effect can be attached, ... but such a change will nevertheless effect a novation if accompanied by the parties’ express declaration that such is their intent, a natural consequence of the basic principle of contractual freedom. When such is the case the original obligation is extinguished and a new one appears in its place, although the object of the performance and the cause of both obligations are the same. Through the same kind of declaration the parties may effect a novation even if the object of the performance of the new obligation is to render a substantial part of the performance of the original one. [Footnotes omitted.]
Novation is never presumed. Isaacs v. Van Hoose, 171 La. 676, 131 So. 845, 847 (1930). Article 1881 discourages the finding of a novation in the absence of a clear indication that a new obligation has been contracted and the original obligation has been extinguished. La. C.C. art. 1881, Revision Comments-1984, comment (a). The intent of the parties is the key factor deciding whether a novation occurred. See Isaacs, 131 So. at 847 (“The intention [to novate] must clearly result from the terms | agof the agreement or by a full discharge of the original debt.”); Pike Burden Printing, Inc. v. Pike Burden, Inc., 396 So.2d 361, 365 (La.App. 1 Cir. 1981) (“Novation may also occur where the intent of the parties, the character of the transaction, the facts and circumstances surrounding the transaction and the terms of the agreement itself reveal a desire to effect a novation.”). Here, the terms of the agreement itself expressly reveal the desire of Rebel and the Clinic to effect a novation. Because paragraph 18 of the 2010 Agreement contains an express declaration that the 2007 Agreement was being novated, the obligations provided for in the 2007 Agreement were expressly novated retroactively by the 2010 Agreement as authorized under the second paragraph of La. C.C. art. 1881, despite the similarities in the 2010 Agreement and 2007 Agreement.[22]
In connection with Rebel’s attempt to enforce the 2010 Agreement, we next examine whether, under the definition of “health care provider” found in La. R.S. 23:1021(6), an agent of a health care provider must also be a health care provider. La. R.S. 23:1021(6) provides:
“Health care provider” means a hospital, a person, corporation, facility, or institution licensed by the state to provide health care or professional services as a physician, hospital, dentist, registered or licensed practical nurse, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist, graduate social worker or licensed clinical social worker, psychiatrist, or licensed professional counselor, and any officer, employee, or agent thereby acting in the course and scope of his employment. [Emphasis added.]
To find that this statutory provision requires that a health care provider be an entity or individual who provides “health care or professional services” to an injured | ^employee would require this court to disregard the emphasized portion of the provision in violation of La. R.S. 1:3.[23] By *841 definition, a health care provider includes “any officer, employee, or agent thereby acting in the course and scope of his employment” for a health care provider. Therefore, Rebel correctly argues that it is irrelevant whether it provided any professional or medical services to Doucet if it was an “agent thereby acting in the course and scope of his employment.” Doctors’ offices employ or contract with persons who are not physicians or nurses. The definition of La. R.S. 23:1021(6) recognizes the reality that non-medical staff members or contracted third parties, as agents for the physicians, are often the ones who process the filing and handle the billing for the professional or medical services rendered by physicians.
The fact that Rebel was not a health care provider is not, therefore, determinative of the issue of whether Rebel has a right of action in these cases. As' an agent of Dr. Heard/the Clinic “thereby acting in the course and scope of his employment,” whether itself a health care provider or not, Rebel would fall within the statutory definition of health care provider under La. R.S. 23:1021(6). We find that the court of appeal erred in concluding otherwise.
CONCLUSION
After considering the applicable law, we find that the anti-assignment language of La. R.S. 23:1205(A) does not prohibit a health care provider from assigning claims under the workers’ compensation laws to a third party. Additionally, in determining whether a novation has occurred under La. C.C. art. 1881, the fact that a “substantial 124Part of the original performance is still owed” does not preclude the finding of a novation when the parties have expressed their intent to novate. Furthermore, La. R.S. 23:1021(6) contemplates that an agent acting in the course and scope of his employment can be considered a health care provider.
There are numerous other issues that have been raised in these consolidated cases, including a challenge to the validity of the underlying agency agreément. As a result of the findings made by the court of appeal as to the issues addressed above, the remaining issues were not considered. Having found the court of appeal legally erred in the findings that formed the basis of its sua sponté sustaining of an exception of no right of action, we reverse the decisions of the court of appeal and remand these consolidated cases to the court of appeal for consideration of those remaining issues in accordance with the views expressed in this opinion.
REVERSED AND REMANDED.
JOHNSON, Chief Justice, dissents.
VICTORY, Justice, dissents and assigns reasons.
GUIDRY, Justice, dissents and assigns reasons.
VICTORY, J.,
dissents.
|TI dissent from the majority’s holding that the anti-assignment language of La. R.S. 23:1205(A) does not prohibit the assignment of a health care provider’s claims to a third party. “When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further inter *842 pretation may be made in search of the intent of the legislature.” La. C.C. art. 9. La. R.S. 23:1205(A) provides in relevant part that “[cjlaims or payments due under this Chapter ... shall not be assignable ...” That means claims or payments due under the workers’ compensation laws, i.e., “this Chapter,” are not assignable. By limiting “claims or payments due under this Chapter” to only those of the injured worker, the majority has deviated from the most basic rule of statutory construction and has essentially re-written the statute. I believe that La. R.S. 28:1205(A) means what it says and precludes the assignment of any claim or payment due under the workers’ compensation laws, including those of a health care provider against the employer or the workers’ compensation carrier. Therefore, I respectfully dissent.

. See La. R.S. 37:1164(56) (" 'Wholesale drug distributor’ means any person who sells legend drugs to other than the consumer or the patient, including but not limited to manufacturers, repackers, own label distributors, jobbers, brokers, agents, and pharmacies.”); see also La. R.S. 37:3461-3482 (referred to as the Louisiana Wholesale Drug Distributors Act).

. The instant claim is one of 19 consolidated actions, which are procedurally identical except for the identity of the injured employees and employers. All employers are insured by LUBA. See Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Mary Doucet) v. LUBA Workers’ Comp., 12-909 (La.App. 3 Cir. 3/6/13), 129 So.3d 80, 2013 WL 811969; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Eric Schenk) v. LUBA Casualty Ins. Company, 12-910 (La.App. 3 Cir. 3/6/13), 129 So.3d 93, 2013 WL 816254; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Oran Breaux) v. LUBA Workers’ Comp., 12-911 (La.App. 3 Cir. 3/6/13), 129 So.3d 93, 2013 WL 2285949; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Verna Lambert) v. LUBA Workers' Comp., 12-912 (La.App. 3 Cir. 3/6/13), 129 So.3d 94, 2013 WL 831532; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Mona Julien) v. LUBA Workers’ Comp., 12-913 (La.App. 3 Cir. 3/6/13), 129 So.3d 95, 2013 WL 831584; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Barbara Layne) v. LUBA Workers’ Comp., 12-914 (La.App. 3 Cir. 3/6/13), 129. So.3d 95, 2013 WL 831595; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Roy Jamón) v. LUBA Workers' Comp., 12-915 (La.App. 3 Cir. 3/6/13), 129 So.3d 96, 2013 WL 831628; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Ulysse Shelvin) v. LUBA, 12-916 (La.App. 3 Cir. 3/6/13), 129 So.3d 96, 2013 WL 831650; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Damien Courville) v. LUBA Workers’ Comp., 12-917 (La.App. 3 Cir. 3/6/13), 129 So.3d 97, 2013 WL 831669; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Howard Citizen) v. LUBA Workers' Comp., 12-918 (La.App. 3 Cir. 3/6/13), 129 So.3d 98, 2013 WL 831708; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Ty Boudoin) v. *830 LUBA Workers’ Comp., 12-919 (La.App. 3 Cir. 3/6/13), 129 So.3d 98, 2013 WL 831731; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Rene Wiggins) v. LUBA Workers’ Comp,, 12-920 (La.App. 3 Cir. 3/6/13); 129 So.3d 99, 2013 WL 831746; Rebel Distributors Corp., Inc. dfb/a Physician Partner and Pharmacy Partner (Miguel Susano) v. LUBA'Workers' Comp., 12-921 (La.App. 3 Cir. 3/6/13), 129 So.3d 100, 2013 WL 831762; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Troy Janice) v. LUBA Casualty Ins. Company, 12-922 (La. App. 3 Cir. 3/6/13), 129 So.3d 100, 2013 WL 832066; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Shirley Prejean) v. LUBA Casualty Ins. Company, 12-923 (La.App. 3 Cir. 3/6/13), 129 So.3d 101, 2013 WL 832086; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Tijuana Hardy) v. LUBA, 12-924 (La. App. 3 Cir. 3/6/13), 129 So.3d 101, 2013 WL 832099; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Roy Jones) v. LUBA, 12-925 (La.App. 3 Cir. 3/6/13), 129 So.3d 102, 2013 WL 832121; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Deshawn Clay-borne) v. LUBA, 12-926 (La.App. 3 Cir. 3/6/13), 129 So.3d 103, 2013 WL 832155; Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Lionel Cerf) v. LUBA, 12-927 (La.App. 3 Cir. 3/6/13), 129 So.3d 103, 2013 WL 832175.

. Concerning nonemergency care, La. R.S. 23:1142(B)(1)(a) provides:
Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in non-emergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an
enforceable obligation against the employee or the employer or the employer’s workers’ compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.

. See La. C.C.P. art. 927(B) (”[T]he failure to disclose a cause of action or a right or interest in the plaintiff to institute the suit ... may be noticed by either the trial or appellate court on its own motion.”).

. An agency relationship is a contract of mandate. See La. C.C. art. 2989 (“A mandate is a contract by which a person, the principal, confers authority on another person, the man-datary, to transact one or more affairs for the principal.”).

. Although the appellate court expressed doubts concerning the effect of the 2010 Agreement, it stated:
[W]e do not have to determine whether [the 2010 Agreement] establishes a valid principal/agency relationship because, even if it does, it is not applicable to the matter now before us.
Rebel Distributors Corp., Inc. d/b/a Physician Partner and Pharmacy Partner (Mary Doucet), 12-909 at 20, 129 So.3d at 92.

. See also cases cited supra note 2.

. Obviously, if factual determinations have to be made in deciding if the plaintiff has a right of action, those factual determinations are evaluated for manifest error. See Barnett v. Saizon, 08-0336, p. 6 (La.App. 1 Cir. 9/23/08), 994 So.2d 668, 672.

. La. R.S. 23:1310.3(F) provides in relevant part:
Except as otherwise provided by R.S. 23:1101(B), 1361, and 1378(E), the workers’ compensation judge shall be vested with original, exclusive jurisdiction over all claims or disputes arising out of this Chapter, including but not limited to ... payment for medical treatment, or attorney fees arising out of an injury subject to this Chapter.

.Concerning an injured employee’s entitlement to penalties and attorney fees if the employer or insurer fails to act timely, La. R.S. 23:1201(F) provides, in pertinent part:
(3) Except as provided in Paragraph (4) of this Subsection, any additional compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee. *834 (4) In the event that the health care provider prevails on a claim for payment of his fee, penalties as provided in this Section and reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the health care provider. This Subsection shall not be construed to provide for recovery of more than one penalty or attorney fee.

. La. R.S. 37:1201 provides:
A. Except as otherwise provided in this Chapter, it shall be unlawful for any individual to engage in the practice of pharmacy unless currently licensed or registered to practice under the provisions of this Chapter.
B. Licensed practitioners authorized under the laws of this state to compound drugs and to dispense drugs to their patients in the practice of their respective professions shall meet the same standards, record keeping requirements, and all other requirements for the dispensing of drugs applicable to pharmacists.
C. It shall be unlawful for any individual to assist in the practice of pharmacy unless currently registered or certified by the board.

. In pertinent part, La. R.S. 37:3462 provides:
(15) "Wholesale drug distribution” means the distribution or sale of legend drugs or legend devices to other than the consumer or patient, including but not limited to distribution by manufacturers, re-packagers, own label distributors, jobbers, third-party logistics providers, retail pharmacy warehouses, pharmacies, brokers, agents, and wholesale drug distributors.
(16) "Wholesale drug distributor” means any person who sells or distributes legend drugs or legend devices to other than the consumer or patient, including but not limited to manufacturers, repackagers, own label distributors, jobbers, third-party logistics providers, retail pharmacy warehouses, brokers, agents, and pharmacies.

.La. R.S. 23:1209(0 provides:
All claims for medical benefits payable pursuant to R.S. 23:1203 shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed with the office as provided in this Chapter. Where such payments have been made in any case, this limitation shall not take effect until the expiration of three years from the time of making the last payment of medical benefits.

. In pertinent part, La. R.S. 1:3 provides: "Words and phrases shall be read with[in] their context[.]” (Emphasis added.)

. In pertinent part, La. R.S. 23:1205(A) provided:
Claims or payments due under this Chapter shall ... be exempt from all claims of creditors and from levy or execution or attachment or garnishment, except under a judgment for alimony in favor of a wife, or an ascendant or descendant.

. In LeBleu, the court recognized that pursuant to La. R.S. 23:1205 "a worker cannot assign his [workers’] compensation claim or payments due him to a third party.” LeBleu, 628 So.2d at 1228.

. In Schoemann, the claimant, who was injured in a motorcycle accident during the course and scope of his employment, filed a workers' compensation suit against his employer and the employer’s workers' compensation insurer. Thereafter, an insurance company that had paid the claimant’s medical expenses intervened seeking reimbursement. The trial court found that the insurance company was entitled to reimbursement from any money collected by the claimant in the related tort case or workers’ compensation payments. The court of appeal amended the judgment and found that the intervenor was not entitled to recover from the claimant's workers’ compensation award, pursuant to the prohibition contained in La. R.S. 23:1205, stating ”[t]o the extent that it affects any of the Workers’ Compensation proceeds going from [the workers’ compensation insurer] to [injured employee] this judgment is in error and is prohibited by statute.” Schoemann, 556 So.2d at 80.

. The court in Globe Indemnity Co. rejected the defendant’s contention that the anti-assignment provision in the predecessor to La. R.S. 23:1205(A) prohibited an assignment between an employer and an insurance carrier. The court found that the anti-assignment language was not "pertinent because it refers to claims or payments due the employee under the act. It is obvious that the provision was placed in the act for the protection of the employee.” Globe Indemnity Co., 129 So. at 237.

. In Dupre, a physician filed suit against an employee and the employer’s workers' compensation insurer, seeking to recover for medical services and hospitalization. The insurer filed an exception of no cause of action, arguing the physician's suit against it arose out of the injured employee’s assignment of his own claim to the insurer, which is prohibited by La. R.S. 23:1205. The trial court granted the exception, and the court of appeal affirmed, stating: *838 Dupre, 99 So.2d at 525. Focusing on the phrase "this strict legislative prohibition ... of all such assignment[s,]” the defendants incorrectly argue that Dupre supports its position by failing to recognize that diis pronouncement was made in the context of an injured employee’s right to assign. (Emphasis added.)
*837 We should say at this point that we think the District Court correctly dismissed plaintiff’s suit against Consolidated insofar as it is alleged to have arisen through a purported assignment by the injured employee of his own claim against the defendant insurer for medical expenses incurred by reason of the industrial accident, in view of the ex *838 press prohibition of LSA-R.S. 23:1205, which provides that all claims arising under the compensation act "shall not be assignable.” Although in this instance, as argued, the assignment was evidently intended to be beneficial to this particular employee, we are compelled to respect this strict legislative prohibition, for reasons of public policy, of all such assignment[s]....

. La. R.S. 23:1020.1(B) provides:
The legislature declares that the purpose of this Chapter is all of the following:
(1) To provide for the timely payment of temporary and permanent disability benefits to all injured workers who suffer an injury or disease arising out of and in the course and scope of their employment as is provided in this Chapter.
(2) To pay the medical expenses that are due to all injured workers pursuant to this Chapter.
(3) To return such workers who have received benefits pursuant to this Chapter to the work force.

. In pertinent part, La. C.C. art. 1883 provides:
Novation has no effect when the obligation it purports to extinguish does not exist or is absolutely null.

. The sentence in La. C.C. art. 1881 relied on by the court of appeal, "[i]f any substantial part of the original performance is still owed, there is no novation,” refers to a situation where there is no express novation and the performance owed under the initial and subsequent agreements are substantially the same.

. Champagne, 12-1697 at 6, 112 So.3d at 183. In construing a statute, an appellate court is bound to consider all parts together, *841 giving effect to all parts, if possible, not construing as surplusage any sentence, clause or word, if a construction can be legitimately found which will give meaning to and preserve all words of the statute. Ritchie v. Louisiana Department of Public Safety and Corrections, 595 So.2d 1158, 1160 (La.App. 1 Cir.1991), writ denied, 600 So.2d 642 (La. 1992).