United States Court of Appeals
Fifth Circuit

F I L E D

June 22, 2004

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
# for the Fifth Circuit

---

No. 03-31030
Summary Calendar

---

BARBARA HALL AND DENNIS HALL,

Plaintiffs-Intervenor Defendants-
Appellants/Appellees,

VERSUS

ELKINS SINN, INC.; WYETH,

Defendants-Intervenor Defendants-
Appellees,

VERSUS

LOUISIANA PATIENT COMPENSATION FUND OVERSIGHT BOARD,

Intervenor Plaintiff-Appellant.

---

Appeals from the United States District Court
for the Western District of Louisiana
m 02-CV-684

---

Before SMITH, DEMOSS, and STEWART,
   Circuit Judges.

PER CURIAM:[*]

Plaintiffs, Barbara and Dennis Hall, and intervenor, Louisiana Patient Compensation Fund Oversight Board ("PCF"), appeal a summary judgment for defendants, Wyeth Company, d/b/a Wyeth-Ayerst Laboratories, and Elkins Sinn, Inc. ("Wyeth"). Plaintiffs' original claim was pursuant to the Louisiana Products Liability Act ("LPLA")[1] and asserted that Gentamicin, a drug manufactured by Wyeth, was unreasonably dangerous because an adequate warning of its potentially harmful effects was not provided. For fundamentally the same reasons expressed in the district court's Memorandum Ruling and Order, we affirm.

I.

The facts are not in dispute. Barbara Hall, suffering from recurrent boils on her right arm, sought treatment from Dr. Kent Seale, who prescribed injections of Gentamicin, a powerful drug that can have serious potential side effects, especially when taken in large dosages or for prolonged periods of time. Seale wrote Hall a prescription for 21 days, well beyond the recommended 7-10 day course of treatment. The pharmacist compounded Hall's risk by providing her with a 33-day supply.

After taking the drug for 28 days, Hall began to experience dizziness and was told by Seale to discontinue her use of Gentamicin. Since then, she has suffered the numerous side effects associated with permanent bilateral vestibular damage, or ototoxicity, as a result of using the drug.

II.

Plaintiffs filed a medical malpractice claim against Seale under the Louisiana Medical Malpractice Act. A medical review panel found that Seale had deviated from the applicable standard of care, and the claim against him was settled for $100,000; the settlement triggered access to the PCF. Plaintiffs also sued the pharmacist; the parties also settled, and the case went to trial against the PCF. The jury returned a verdict finding Seale 85% liable, the pharmacist 10%, and Hall 5%. The state appellate courts affirmed.[2]

After bringing the above-described case in state court, plaintiffs sued the manufacturers of Gentamicin in federal court, using diversity jurisdiction. Plaintiffs charged that defendants failed to provide adequate warnings for their drug and that the failure to warn was a legal and proximate cause of Hall's injuries. Defendants sought summary judgment, asking to dismiss the claim for five reasons: (1) The warnings accompanying Gentamicin were clear and unambiguous as a matter of law; (2) Seale did not read the physician labeling supplied with the product, but acknowledged he was aware of the risks associated with the drug; (3) the labeling supplied with Gentamicin was approved by the Food & Drug Administration; (4) plaintiffs offer no expert testimony refuting the adequacy of the warning; and (5) plaintiffs' claims against Wyeth are precluded by the state court judgment. The district court

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set fort in 5TH CIR. R. 47.5.4.

[1] LA. REV. STAT. art. 9:2800.57.

[2] See Hall v. Brookshire Bros., Ltd., 831 So. 2d 1010 (La. App. 3d Cir. 2002); Hall v. Brookshire Bros., Ltd., 848 So. 2d 559 (La. 2003).

granted summary judgment based on defendants' final assertion that the claim was barred under issue preclusion, a concept that had been adopted in 1991 by the Louisiana legislature.[3] The court also noted that, putting aside any question of issue preclusion, summary judgment should be granted because of the applicability of the "learned intermediary doctrine" and the plaintiffs' subsequent failure to establish causation.

## III.
### A.

A motion for summary judgment under Federal Rule of Civil Procedure 56 should be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In determining whether there is a genuine issue of material fact, evidence and inferences must be drawn in the light most favorable to the non-moving party. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001). We review a summary judgment *de novo*. *Meditrust Fin. Serv. Corp. v. Sterling Chem., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999).

### B.

The district court held that plaintiffs' claim against Wyeth was barred by the state litigation. Pursuant to LA. CIV. CODE art. 425, the court maintained that the claim was issue-precluded, and plaintiffs' failure to join Wyeth as a party in the first litigation effectively amounted to a waiver of any claim against the manufacturers.[4]

Plaintiffs argue that the district court erred in applying art. 425 and that Hall's claim against Wyeth is of a fundamentally different nature from the claims asserted in the earlier litigation, because the new cause of action involves different parties and derives from different circumstances. This argument is without merit.

The fact that the causes of action involve different defendants is irrelevant, because the purpose of article 425 is to encourage plaintiffs to join all possible defendants in a single litigation and to prevent relitigation of issues rather than claims. The purpose of issue preclusion is to prevent relitigation of issues already dealt with by the courts, so as to maximize judicial economy and minimize conflicting judgments.

The state jury apportioned 100% of the fault of Hall's injuries. To allow the claim against Wyeth to proceed would require a re-apportionment of fault and a relitigation of the same issues of causation already dealt with in the first suit. This result would be fundamentally at odds with the principles behind *res judicata*.

Moreover, plaintiffs contend the cause of action against Wyeth derives from a set of circumstances different from those underlying the causes of action against earlier defendants. Although, however, three independent alleged faults can be discerned from the facts, all of these alleged faults arise from the same nucleus of facts and unite to create a single, indivisible harm.

Hall's use of Gentamicin resulted in her

---

[3] LA. CIV. CODE art. 425.

[4] The relevant section of art. 425 states that "a party shall assert all causes of action arising out of the transaction or occurrence that is the subject (continued...)

---

[4](...continued) matter of the litigation."

developing ototoxicity. The question whether this was the result of the doctor's negligence or the manufacturer's inadequate warnings represents two separate causes of action rather than two separate transactions or occurrences. Plaintiffs' interpretation that article 425 asks the court to examine whether "the same transaction or same cause of action is asserted in the second suit" is a blatant misreading of the statute, which instead requires a plaintiff to assert "all causes of action arising out of the transaction *or occurrence* that is the subject matter of the litigation" (emphasis added). Just because one cause of action is governed by the rules of medical malpractice and another by products' liability is no reason to allow for a separation of the claims when they involve the same facts and the same questions of fault and causation.

The district court cites *Westerman v. State Farm Mut. Auto. Ins. Co.*, 834 So. 2d 445 (La. App. 1st Cir. 2002), to illustrate this point. *Westerman* holds that plaintiff's first action based in tort barred her from bringing a second action based in contract, because the two causes of action arose from the same occurrence (an automobile accident). Requiring Hall to have joined Wyeth and the earlier defendants in the same suit or lose her claim against Wyeth is consistent with *Westerman* and the proper reading of article 425.

## C.

Although it is not necessary to our decision, we note that the district court was correct in its analysis of the learned intermediary doctrine. On that issue, plaintiffs argue that *Stahl v. Novartis Pharms. Corp.,* 283 F.3d 254 (5th Cir. 2002), should be the guiding authority.

Plaintiffs reason that for summary judgment to be proper, defendants must prove that plain-tiff's doctor "unequivocally" testified that "warning was adequate to inform him or her of the risks involved" in addition to proving that the warning contains a "clear and unambiguous reference to the adverse reactions suffered by the Plaintiff." *Id.* at 267. Although plaintiffs maintain that the warning is lacking, they offer no expert testimony to back this claim up, nor do they attempt to refute defendants' expert testimony or evidence to the contrary.

Plaintiffs also aver that because Seale's affidavit does not unequivocally testify regarding the adequacy of the warning, questions of fact remain that make summary judgment improper. Because, however, Seale failed to read the warnings provided, he could not truthfully testify as to whether the warnings were adequate to prevent him from prescribing the drug to Hall. Additionally, Seale acknowledged his awareness of the risks anyway, further making *Stahl* an inappropriate guide in this case.

Contrary to the plaintiffs' argument, the "learned intermediary doctrine" applies in this case, because it involves a prescription drug. Under the doctrine, a manufacturer's duty to warn the end-user is discharged to the physician because of the expertise necessary to understand the warning labels adequately. *Easterling v. Cardiac Pacemakers, Inc.*, 1998 WL 50021, at *3 (E.D. La. Feb. 6, 1998) (denying motion for reconsideration); *Reyes v. Wyeth Labs.*, 498 F.2d 1264, 1276 (5th Cir. 1974). To prevail on a failure to warn case under the LPLA, a plaintiff must prove that the manufacturer failed to warning the treating physician of the dangers associated with the drug *and* that this failure was both a cause in fact and a proximate cause of plaintiff's injury. *Willett v. Baxter*, 929 F.2d 1094 (5th Cir. 1991).

4

Under this two-prong test, failure to warn is just one part necessary to find the manufacturer at fault. Plaintiffs never address the second prong of causation, because they cannot offer any evidence to support a jury finding in their favor. Seale's affidavit acknowledges that he never read the warning and that he was aware of the risks of the drug independently of Wyeth's labels; therefore, Wyeth's warning (adequate or inadequate) played no role in the events leading to Hall's injury. Even if we assume, *arguendo*, that the warning was inadequate, plaintiffs would be unable to show that a proper warning would have changed Seale's decision to prescribe Gentamicin. Because plaintiffs are unable to provide any evidence to support proximate and legal causation, their claim fails as a matter of law.

AFFIRMED.