ROBERT A. CHAISSON, Judge.
|2In this lawsuit involving a dispute over contracts for the purchase of scrap corn products, Zen-Noh Grain Corporation appeals from a judgment sustaining an exception of Us pendens. For the following reasons, we vacate the judgment and remand the matter for further proceedings.
FACTS AND PROCEDURAL HISTORY
On October 21, 2011, Justin Thompson entered into a written contract with Zen-Noh for the purchase of a quantity of scrap grain which was stored in grain bins in Port Allen, Louisiana. That contract provided that the scrap grain would be dry and that Mr. Thompson would have a minimum of two trailers available to haul the grain during the “shipment period” of November 1 to November 30, 2011. The clean-out of the grain bins was not completed by November 30, but Mr. Thompson continued to accept grain and haul it to his property in Rapides Parish. At some point during the clean-out process, the remaining grain was so impacted that pressurized water was used to break apart the grain so that it could be removed from the bins. At that time, Zen-Noh contracted with a third-party that had trailers Iscapable of transporting wet grain to deliver the grain to Mr. Thompson’s property. Zen-Noh maintains that this procedure was used by agreement of Mr. Thompson and that he accepted 1,056.41 tons of hydro-blasted grain between February 6, 2012, and March 15, 2012, on which date he refused to accept the last shipment of grain. On March 22, 2012, Mr. Thompson filed suit in Rapides Parish alleging that the grain had been delivered late and that some of it had been wetted down. In that suit he seeks damages of $164,000 for his lost profits and additional damages of $130,000 for the estimated cost of removing the wetted and decayed grain from his property.
During December of 2011, while the above events were transpiring, Mr. Thompson and Zen-Noh entered into four separate verbal contracts for the purchase of scrap corn product which was stored at Zen-Noh’s grain bins in St. James Parish. Zen-Noh maintains that Mr. Thompson picked up all of the scrap corn product specified in these contracts, but failed to pay for all of it. On July 9, 2012, Zen-Noh filed the present suit in St. James Parish to collect approximately $163,000 which it claims is owed on the sale of the scrap corn product under these contracts.
In response to this suit, Mr. Thompson urged an exception of lis pendens pursuant to La. C.C.P. art. 531. He argues that the disputes in both suits arise out of the same “transaction or occurrence.” The trial judge sustained the exception and dismissed the St. James case. This appeal followed.
LAW AND ANALYSIS
La. C.C.P. art. 531 provides, in pertinent part, that “[w]hen two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, |4between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925.” The issue here is whether the dealings between the parties which underlie the Rapides Parish and St. James Parish suits constitute the same “transaction or occurrence” for purposes of the lis pendens exception. The meaning of the phrase “transaction or occurrence” was extensively addressed in Hy-Octane Investments, Ltd. v. G & B Oil Products, Inc., 97-28 (La.App. 3 Cir. 10/29/97), 702 So.2d 1057, as follows:
The term “transaction or occurrence” is used in seven articles of the Code of *779 Civil Procedure. In addition to its use in Article 1061, it is found in Article 425, which deals with preclusion by judgment; it is used in Articles 531 and 532, both dealing with lis pendens; in Article 891, the term enumerates one of the required formalities of a petition; in Article 1071 it defines the parameters of a cross-claim; and in Article 4845, the term helps define the jurisdictional limits of city and parish courts. Another provision, Article 1153, uses the slightly different expression “conduct, transaction, or occurrence” as part of the formula for when an amendment to a pleading relates back for prescription purposes.
Although none of these articles specifically define the expression “transaction or occurrence,” they variously equate the term with “the subject matter of the litigation” (Articles 425 & 891), “the subject matter of the principal action” or “principal demand” (Article 1061 & 4845), and “the subject matter either of the original action or a reconventional demand or relating to any property that is the subject matter of the original action” (Article 1071). What the transaction or occurrence is that is the subject matter of the litigation, or the principal demand or action, or the original action, has been determined on a case-by-case basis, according to the annotations under these articles.
Some definitions are available, however. Black’s Law Dictionary defines “transaction” as, inter alia, “a broader term than ‘contract,’ ” and “a group of facts so connected together as to be referred to by a single legal name; as a crime, a contract, a wrong.” Among the definitions of “transaction or occurrence” found in 42 Words and Phrases, Supp. p. 201 (1997), is “whether pertinent facts of different claims are so logically related that issues of judicial economy and fairness mandate that all issues be tried in one suit.” The federal courts have given the words “transaction or occurrence” a broad and liberal interpretation in order to avoid a multiplicity of suits. All logically related events entitling a person to institute legal action against another generally are regarded as comprising a “transaction or occurrence.” Lasa Per L’Industria Del Marmo Soc. Per Azioni v. Alexander, 414 F.2d 143 (6th Cir.1969).
In the context of a res judicata exception, this Court has followed the federal analysis of a “transaction or occurrence” in the compulsory counterclaim context. See Durkin v. Quest, Inc., 98-939 (La.App. 5 Cir. 12/29/98), 724 So.2d 868, citing Park Club, Inc. v. Resolution Trust Corp., 967 F.2d 1053 (5th Cir.1992). That analysis involves a four part inquiry as to:
(l)Whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether res judicata would bar a subsequent suit on defendant’s claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiffs claim as well as defendant’s counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim. An affirmative answer to any of the four questions indicates the counterclaim is compulsory. This standard is taken from Fed.R.Civ.P. 13(a), which provides that a counterclaim is compulsory if it “arises out of the transaction or occurrence which is the subject matter of the opposing party’s claim.” (Citations omitted). Durkin, at 870-71.
In the present case, none of the four questions can be answered in the affirmative. Zen-Noh correctly points out that the issues to be resolved in the Rapides *780 Parish litigation are whether it breached the contract in failing to timely deliver the scrap grain and in delivering wet grain, and if so, the amount of damages suffered by Mr. Thompson. The issue in the St. James litigation is whether Mr. Thompson paid in full for the scrap corn product he received under the four contracts. The facts of the two suits are thus distinct, a judgment in either suit would not constitute res judicata in the other, entirely different evidence will support or refute the claims in the two suits, and there is no logical relationship between the two actions. While it can be argued that both parties are in the grain business, had an ongoing business relationship, and are now involved in disputes over grain contracts, those facts alone are insufficient to meet the “arising out of the same transaction or occurrence” requirement of La. C.C.P. art. 531.
IfiWe also note that Mr. Thompson argues in brief that the logical relationship between the two actions arises because “without ZGC’s breach of contract # S91099 [the Rapides Parish suit] Thompson would not have withheld payment on the four December contracts [the St. James Parish suit], and there would be no dispute.” Zen-Noh correctly points out, however, that this argument is based on the concept of compensation as set forth in La. C.C. art. 1893. That article provides that compensation can only take place when the sums in question are liquidated and presently due. Here, the monies claimed by the two parties have not yet been liquidated, nor are they presently due. See National Glass & Glazing, Inc. v. Grimaldi Construction, Inc. 96-121 (La.App. 5 Cir. 7/30/96), 680 So.2d 56. The assertion by Mr. Thompson is simply in anticipation that resolution of the two suits will result in a situation where some set-off may become available once both suits are finally adjudicated. Such a supposition does not in any way establish that the two suits are now to be considered as arising out of the same “transaction or occurrence.”
The standard of review in the lis pen-dens context is whether the trial court abused its sound discretion. See Rivers v. Bo Ezernack Hauling Contractor, LLC, 09-1495 (La.App. 3 Cir. 5/5/10), 37 So.3d 1088. In the present matter, we find such an abuse. As shown above, the two actions at issue clearly do not arise out of the same transaction or occurrence, and it was thus error to sustain the exception of lis pendens and dismiss the St. James Parish suit.
CONCLUSION
For the foregoing reasons, the judgment sustaining the exception of lis pendens and dismissing the suit filed by Zen-Noh against Justin Thompson in |7St. James Parish is hereby vacated, and the case is remanded to the district court for further proceedings consistent with this opinion.

VACATED AND REMANDED