THOMAS HANDY, JR., ET. AL.

VERSUS

THE PARISH OF JEFFERSON

NO. 20-C-122

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 738-972, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING


June 01, 2020


**JUDE G. GRAVOIS**
**JUDGE**


Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and John J. Molaison, Jr.


**WRIT GRANTED; EXCEPTION OF NO CAUSE OF
ACTION GRANTED; SUIT DISMISSED WITH
PREJUDICE; REQUEST FOR ORAL ARGUMENT
DENIED**
 **JGG**
 **SMC**
 **JJM**

COUNSEL FOR PLAINTIFF/RESPONDENT,
THOMAS HANDY, JR., ET. AL.
    Caleb H. Didriksen, III
    Erin Bruce Saucier

COUNSEL FOR DEFENDANT/RELATOR,
THE PARISH OF JEFFERSON
    Michael S. Futrell
    Matthew D. Moghis

**GRAVOIS, J.**

Defendant/relator, the Parish of Jefferson, seeks this Court's supervisory review of the trial court's January 31, 2020 judgment which denied its peremptory exception of no right of action. In its exception, the Parish argued that the petition of plaintiffs/respondents, Thomas Handy, Jr., et al., failed to state a right of action against the Parish pursuant to La. C.C.P. art. 425's requirement that a party shall assert all causes of action arising out of the same transaction or occurrence that is the subject matter of the litigation in one suit, plaintiffs having previously filed a separate suit in Orleans Parish against 30-plus asbestos manufacturers/sellers[1] alleging the same causes of action arising out of the same transaction or occurrence as they asserted in this Jefferson Parish suit against the Parish of Jefferson alone.

Previously, in an earlier writ application to this Court that was opposed by plaintiffs, and argued before a five-judge panel, this Court denied the Parish's writ application seeking review of the trial court's denial of an earlier exception of no right of action on the same grounds for the reason that the Parish had failed to properly introduce evidence at the hearing on the exception. *Handy, et al. v. The Parish of Jefferson*, 19-210 (La. App. 5 Cir. 1/6/20) (unpublished writ disposition). In a lengthy and scholarly dissent, Judge Molaison opined that no procedural bar prevented this Court from reaching the merits of the exception, and on the merits, he would find that the trial court erred in denying the exception.

Following this Court's writ denial, the Parish filed another exception of no right of action on the same grounds. A hearing on the second exception was held on January 28, 2020. This time, at the hearing, the Parish properly introduced evidence in support of the exception, which evidence was accepted by the trial court. At this hearing, the parties also clarified that the Parish of Orleans was

---

[1] In different parts of the writ, it is asserted that plaintiffs sued at least 36 defendants but possibly as many as 40 defendants in the Orleans Parish suit.

never made a defendant in the Orleans Parish suit. The trial court again denied the exception. Relying heavily on case law from other circuits and federal jurisprudence, the trial court held that La. C.C.P. art. 425 does not create a separate and distinct remedy from the principles of *res judicata*. The court held that Article 425 must be read *in pari materia* with the principles of *res judicata* and therefore required the same identity of parties in the two suits, and because the Parish was not a party to the Orleans Parish suit, Article 425 did not apply to bar this second suit filed in Jefferson Parish against the Parish of Jefferson alone asserting causes of action arising out of the same transaction or occurrence (the alleged asbestos exposure of Thomas Handy, Jr. from 1960 through 2001 at various work sites in both Jefferson and Orleans Parishes) as was also alleged in the Orleans Parish suit. The trial court specifically found it unnecessary, therefore, to reach the issue of whether all 30-plus defendants in the Orleans Parish suit could have been sued in Jefferson Parish along with the Parish of Jefferson.

Thereafter, the Parish filed the instant writ application. Plaintiffs filed an opposition to the writ application, to which the Parish filed a reply.

Herein, the Parish argues that when possible, Louisiana law prohibits plaintiffs from maintaining separate lawsuits arising out of the same transaction or occurrence (and seeking the same damages), and that no procedural rule in this case prohibited plaintiffs from filing a single action in Jefferson Parish that included all of the defendants that had been sued in the Orleans Parish suit along with the Parish of Jefferson. The Parish argues that plaintiffs have fully litigated their lawsuit in Civil District Court for the Parish of Orleans against the 30-plus defendants, seeking damages caused by Mr. Handy's alleged exposures to asbestos, and now, in this suit filed in the 24th Judicial District Court, seek the same damages for the same alleged exposures, but here *only* against the Parish of Jefferson. The Parish argues that because La. C.C.P. art. 425 does not contain a

requirement that there be an identity of parties in order to be operable, as do the principles of *res judicata*, the trial court erred in relying on state and federal jurisprudence reading this requirement into the statute.

The Parish further contends that plaintiffs may not circumvent the venue mandate under La. R.S. 13:5104(B)[2] to the prejudice of a political subdivision by choosing to file separate lawsuits arising out of the same transaction or occurrence. The Parish argues that Article 425 and La. R.S. 13:5104, collectively, required plaintiffs to maintain a single suit on all causes of action arising out of the same transaction or occurrence in Jefferson Parish. The Parish contends that it established, and plaintiffs conceded, at the hearing on the exception, that La. C.C.P. art. 73 would have allowed them to file a single suit against all the defendants, including the Parish of Jefferson, in Jefferson Parish.

The Parish argues that the purpose of Article 425's requirement that "[a] party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation" is amply illustrated by the extreme prejudice that would result in allowing plaintiffs to proceed against the Parish as the lone defendant in this suit, requiring the Parish to independently establish the potential fault of dozens of non-parties, the 30-plus defendants who were already sued in the Orleans Parish suit.

In their opposition to the writ application, plaintiffs argue that La. C.C.P. art. 425 is not a "hard and fast" rule, nor does it contain a penalty provision, and therefore its application should "yield to the interests of justice," citing *Breaux v. Avondale Industries, Inc.*, 02-1713 (La. App. 4 Cir. 3/12/03), 842 So.2d 1115, 1117, *writs denied*, 03-1009, 03-1026, 03-1054, 03-1055, 03-1064 (La. 6/20/03),

---

[2] La. R.S. 13:5104(B) provides, in pertinent part:

All suits filed against a political subdivision of the state … shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises.

847 So.2d 1243, 1244, 1245. Plaintiffs argue that La. C.C.P. art. 425 must be read *in pari materia* with the *res judicata* statutes, and that the Parish's reliance on *Westerman v. State Farm Mut. Auto. Ins*. Co., 01-2159 (La. App. 1 Cir. 9/27/02), 834 So.2d 445, is misplaced, as they claim most courts have "essentially" abandoned *Westerman*'s interpretation of Article 425. They further argue that there is no indication, as the Parish claims, that plaintiffs are attempting to receive "multiple recoveries" for their damages by proceeding in a second suit against Jefferson Parish. They argue that their acts of filing two suits, one in Jefferson Parish and one Orleans Parish, on the same day, was a strong "reservation of rights," as to the Parish of Jefferson.[3]

For the following reasons, we find that the trial court erred in denying the exception. Accordingly, we grant the writ application, grant the exception of no right of action, and dismiss plaintiffs' suit with prejudice.

## ANALYSIS

The peremptory exception of no right of action tests whether the individual bringing an action has the capacity or legal interest in judicially enforcing the right asserted. *Grubbs v. Haven Custom Furnishings, LLC*, 18-710 (La. App. 5 Cir. 5/29/19), 274 So.3d 844, 849. The issue of whether an action is precluded by La. C.C.P. art. 425 may be raised by an exception of no right of action. *Breaux v. Avondale Industries, Inc.*, *supra*, 842 So.2d at 1123. The burden of proof of establishing the exception of no right of action is with the exceptor. *Grubbs v. Haven Custom Furnishings, LLC*, 274 So.3d at 849.

The pertinent procedural history of this case was fully and accurately explained by Judge Molaison in his dissent in Writ No. 19-210, *supra*, to wit:

> The action against the Parish was brought in Jefferson Parish at the same time as plaintiffs' separate action in Orleans Parish claiming

---

[3] In their opposition to the writ application, plaintiffs asserted: "One can hardly imagine more of a reservation of rights against a defendant than filing suit against it, and against different parties, in two different jurisdictions, on the same day."

damages from a number of private companies for asbestos exposure.[4] The Parish contends the plaintiffs improperly split their cause of action and are precluded from litigating their damage claims against the Parish now that their claims for the same damages in the other lawsuit have been resolved.[5]

The two lawsuits were brought in 2014. Plaintiffs named more than 30 private companies as defendants in their suit in Orleans Parish, alleging them to be solidarily liable, and only one defendant, the Parish of Jefferson, in their suit in Jefferson Parish. The Parish of Jefferson was not named as a defendant in Orleans Parish. Both petitions allege that Handy was exposed to asbestos throughout his career, from 1960 to 2001, on numerous work projects in Orleans and Jefferson Parishes and developed lung cancer as a result. In both lawsuits, plaintiffs sought to recover damages caused by Handy's occupational exposure to asbestos.

In the Orleans Parish lawsuit, plaintiffs' claims against one defendant, Ferguson Enterprises, Inc., successor in interest to LUSCO, were tried before a jury, which found that Handy was exposed to asbestos-containing products and that the exposures were a substantial contributing factor in causing his lung cancer, but that the products supplied or distributed by LUSCO were not a substantial contributing factor in causing Handy's lung cancer. The jury verdict was affirmed on appeal. *Handy v. Owens Corning Corporation*, 18-0491 (La. App. 4 Cir. 12/26/18), 262 So.3d 965, 968, *writ denied*, 19-0153 (La. 3/18/19), 267 So.3d 90. The opinion states that Ferguson Enterprises was the only remaining defendant at the time of trial. *Id.*

After the jury verdict in the Orleans Parish lawsuit was affirmed on appeal, the Parish filed a peremptory exception of no right of action in the Jefferson Parish lawsuit, asserting that plaintiffs should have named all defendants in a single lawsuit in Jefferson Parish and were precluded from proceeding against the Parish in a separate lawsuit in Jefferson Parish once their Orleans Parish lawsuit was concluded. La. C.C.P. art. 927. The Parish relied on [] La. R.S. 13:5104, which requires suits against a political subdivision of the state to be filed in the judicial district where the political subdivision is located, and on La. C.C.P. art. 425, entitled "Preclusion by judgment." Section (A) of Article 425 states:

> A party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation.

Plaintiffs opposed the exception, asserting, among other things, that preclusion under Art. 425 applies only when there is an identity of parties in the two lawsuits, which is not the case here.

---

[4] Handy, his wife and his son were the original plaintiffs in both lawsuits. Handy died in 2017. [Footnote in original dissent.]

[5] Footnote here in original dissent omitted.

*Handy, et al. v. The Parish of Jefferson*, 19-210 (La. App. 5 Cir. 1/6/20) (unpublished writ disposition, dissent of Molaison, J.).

In its reasons for judgment issued on January 31, 2020, the trial court ruled that because there was no identity of parties between the Orleans Parish suit and the Jefferson Parish suit, Article 425 did not apply to defeat plaintiffs' right of action against the Parish of Jefferson in this suit. The trial court thus declined to address the venue issues of La. R.S. 13:5104.

After thorough consideration of the writ application before us, plaintiffs' opposition to the writ application, and the Parish's reply thereto, we find that the thorough analysis provided by Judge Molaison in his dissent remains applicable to the issues again before this Court. Accordingly, that analysis, which is reprinted in its entirety below except as otherwise noted, is hereby adopted by and provides the basis for this Court's ruling herein, to wit:

### Standard of Review

When, as here, the trial court does not make any factual findings in deciding an exception of no right of action, the determination of whether the plaintiffs have a legal right to bring an action raises a question of law, which requires a *de novo* review. *Lopez Languirand*, 261 So.3d 1054, 1058, citing *Rebel Distributors Corp., Inc. v. LUBA Workers' Compensation*, 13-749 (La. 10/15/13), 144 So.3d 825, 833. Any doubt regarding the appropriateness of an exception of no right of action is to be resolved in favor of the plaintiff. *Id.*

### Article 425 Preclusion

As noted, La. C.C.P. art. 425(A) states: "A party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation." Neither this court nor the Louisiana Supreme Court has interpreted Article 425(A) in a dispute such as this one. Other state appellate courts have reached different conclusions on the meaning of this provision.

### First Circuit

In *Westerman v. State Farm Mut. Auto. Ins. Co.*, 01-2159 (La. App. 1 Cir. 9/27/02), 834 So.2d 445, the First Circuit discussed the legislative history of Article 425(A), which was amended to its current wording in 1990.[6] Before the amendment, the article prevented a litigant from dividing an obligation due him by bringing

---

[6] 1990 La. Acts, No. 521. [Footnote in original dissent.]

separate actions on different portions thereof, and the case law focused on whether the separate actions were for enforcement of the same obligation. *Westerman*, 834 So.2d at 446-448. The pre-1990 version of Article 425 was considered to be "a corollary to the doctrines of res judicata and estoppel by judgment, all of which were intended to avoid a multiplicity of suits and to prevent harassment, delay, and unnecessary expense to a defendant." *Succession of Raziano*, 538 So.2d 1136, 1138 (La. App. 5 Cir. 1989), *writ denied*, 541 So.2d 874 (1989), citing *Sutterfield v. Fireman's Fund Am. Ins. Co.*, 344 So.2d 1159, 1161 (La. App. 4 Cir. 1977).[7]

The *Westerman* court noted the Comment to the 1990 revision, which states that the amendment "expands the scope of this Article to reflect the changes made in the defense of res judicata and puts the parties on notice that all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation must be raised." 834 So.2d at 448.

Based on that history, the court concluded that a plaintiff must assert all claims arising out of the same transaction or occurrence in the same action, and that the failure to do so amounts to a waiver of any claims that should have been asserted but were not. 834 So.2d at 448. The court affirmed the dismissal of the plaintiff's claim against her uninsured motorist carrier, which she brought in a separate lawsuit after being awarded damages against the owner of the other vehicle and his liability carrier, settling those claims for the insurer's policy limits, and dismissing them with prejudice.

The First Circuit later distinguished its decision in *Westerman* and found that Article 425 did not preclude a pedestrian from bringing a separate action against her uninsured motorist carrier after she settled and dismissed her claims against the driver and his liability carrier because she reserved her rights against the UM carrier in the judgment of dismissal. *Butler v. United States Auto. Ass'n Ins. Co.*, 04-2562 (La. 12/22/05), 928 So.2d 53, 55, *writ denied*, 06-0182 (La. 4/24/06), 926 So.2d 546. Although the *res judicata* law was not directly applicable because the parties to the two actions were not identical, the court noted that the general rules of *res judicata* do not apply when the judgment in the prior action reserves the plaintiff's right to bring another action, as stated in La. R.S. 13:4232.[8] *Id.*

**Third Circuit**

The Third Circuit disagreed with the First Circuit's interpretation of Article 425 in *Westerman* and reached a different result under similar facts in *Spires v. State Farm Mut. Auto. Ins. Co.*, 08-573 (La. App. 3 Cir. 11/5/08), 996 So.2d 697, *writ denied*, 08-2871

---

[7] See also *Honeycutt v. Town of Boyce*, 341 So.2d 327, 331 (La. 1976), in which the Supreme Court said of Article 425: "It is the unnecessary expense, delay and vexation in the administration of justice which the law aims to avoid." [Footnote in original dissent.]

[8] The result in *Butler* is also supported by the Louisiana Supreme Court's holding in *Honeycutt v. Town of Boyce*, 341 So.2d at 331, that the settlement of a claim with a reservation of rights to pursue other rights by another suit on other aspects of the claim was not proscribed by the pre-1990 version of La. C.C.P. art. 425. [Footnote in original dissent.]

(La. 2/6/09), 999 So.2d 783.  The court found that Article 425 did not preclude the plaintiffs from bringing a separate suit against their uninsured motorist carrier after settling their claims against the driver and the owner of the other vehicle and their liability carrier for the insurer's policy limits and dismissing those claims with prejudice, without a reservation of rights against their UM carrier.  The court concluded that preclusion under Article 425 does not apply unless the parties to both actions are the same, and that an express reservation of rights against the UM carrier is not necessary when the tortfeasor's insurer agrees to settle the case for its policy limits in exchange for dismissal of the suit.  996 So.2d at 700.

The court in *Spires* cited two prior Third Circuit decisions stating that Article 425, as amended in 1990, must be read *in pari materia* with the res judicata statutes, which were amended at the same time, and that Article 425 "contains no penalty provision; rather it is merely a reference to the principles of *res judicata*."[9]  996 So.2d at 699-700.  See, respectively, *Walker v. Howell*, 04-246 (La. App. 3 Cir. 12/15/04), 896 So.2d 110, 112 and *Gaspard v. Allstate Ins. Co.*, 04-1502 (La. App. 3 Cir. 5/4/05), 903 So.2d 518, 520, *writ denied*, 05-1510 (La. 12/16/05), 917 So.2d 1114.

The issue in the *Walker* case was whether the defendant in an action brought in justice of the peace court could assert a reconventional demand against the plaintiff for the first time in the district court, where the defendant's appeal of an adverse judgment by the justice of the peace court was pending.  Although the reconventional demand involved the same parties as the initial demand, the appellate court concluded that *res judicata* did not apply because the reconventional demand was asserted while the case was on appeal, and La. R.S. 13:4231 explicitly states that *res judicata* does not apply on appeal or other direct review.  896 So.2d at 112.  The court's statements concerning Article 425 thus appear to be dicta.

In *Gaspard*, the plaintiff's suit against her uninsured motorist carrier was not precluded by the settlement and dismissal of a prior suit against the other driver and his liability insurer with a reservation of rights against any other insurers.  The court found *Westerman* to be distinguishable based on the reservation of rights and the fact that the plaintiff's suit against the UM carrier was filed before the prior action was dismissed.[10]  903 So.2d at 520.

The *Gaspard* court's statements concerning Article 425, including the statement that an identity of parties is required for preclusion under Article 425, are based entirely on *Walker v. Howell*, which involved the same parties and a judgment that was not final, as

---

[9] Under *res judicata* principles, a valid and final judgment is conclusive between the same parties with respect to claims that were or could have been litigated in the proceeding giving rise to the judgment. See La. R.S. 13:4231; *Guerrero v. Guerrero*, 12-527 (La. App. 5 Cir. 3/27/13), 110 So.3d 723, 727-728. Res judicata does not apply here because the Parish of Jefferson was not a party to the action in Orleans Parish. [Footnote in the original dissent.]

[10] *Gaspard* was decided before the First Circuit's decision in *Butler*, cited above, in which the court distinguished *Westerman* on the basis of a reservation of rights. [Footnote in the original dissent.]

noted above.  The statements in *Gaspard*, like those in *Walker,* appear to be dicta.

**Second Circuit**

The Second Circuit addressed preclusion under Article 425 in *Ward v. State, Dept. of Transp. & Development*, 43,948 (La. App. 2 Cir. 1/28/09), 2 So.3d 1231, *writ denied*, 09-0431 (La. 4/17/09), 6 So.3d 791.  In *Ward*, the driver and a passenger who were injured when another driver lost control of his vehicle on a state highway filed two lawsuits for the same damages arising from the same accident.  The first suit involved a claim of improper road maintenance against the State Department of Transportation and Development (DOTD).  The second suit was brought against the driver and the owner of the other vehicle and their liability insurer and was dismissed after the insurer deposited its policy limits into the court registry in a concursus proceeding to which DOTD was not a party.

The appellate court reversed a trial court judgment dismissing the suit against DOTD on the basis of Article 425 preclusion.  The court initially stated that all elements of *res judicata*, such as identity of parties, must be met for Article 425 preclusion to apply, citing *Gaspard* as authority.  2 So.3d at 1235.  However, because DOTD was not a potential claimant in the concursus proceeding and thus could not have been made a party to that proceeding, the court found the action against DOTD was not precluded by the dismissal of the other lawsuit.  *Id.*

The court in *Ward* also cited *Walker* and *Butler* for general statements equating Article 425 preclusion with *res judicata*.[11]  The *Ward* court did not cite or discuss *Westerman*, which interpreted Article 425 more broadly and did not require an identity of parties for Article 425 preclusion to apply.

**Federal Case**

The First Circuit's interpretation of Article 425 in *Westerman* was cited with approval by the U.S. Fifth Circuit Court of Appeals in *Hall v. Sinn, Inc.*, 102 Fed. Appx. 846 (5th Cir. 2004).  The plaintiff suffered injuries from using a drug as prescribed by her doctor.  She sued her doctor, her pharmacist and the Patient Compensation Fund in state court.  After settling her malpractice claims against the doctor and the pharmacist, the plaintiff obtained a judgment against the Patient Compensation Fund based on a jury verdict apportioning fault among the doctor, the pharmacist and the plaintiff.  She then brought a separate suit against the drug manufacturer in federal court.

Applying state preclusion law as set forth in La. C.C.P. art. 425, the federal appellate court affirmed the dismissal of the federal lawsuit on the basis that the plaintiff's failure to sue the drug manufacturer in the first lawsuit amounted to a waiver of any claim against it because that claim arose from the same transaction or occurrence involved in the first lawsuit.  102 Fed. Appx. at 848.  The court stated that the

---

[11] Those statements in *Butler* come from *Walker* and *Gaspard*.  [Footnote in the original dissent.]

purpose of Article 425 preclusion is "to prevent relitigation of issues already dealt with by the courts, so as to maximize judicial economy and minimize conflicting judgments," and that "all of these alleged faults arise from the same nucleus of facts and unite to create a single, indivisible harm." *Id.*

### *Trial Court's Resolution of Conflicting Decisions*

In denying the Parish's [first] exception of no right of action, the trial court found the Third Circuit's interpretation of Article 425 in *Spires* (identity of parties is required for preclusion under Article 425) to be more persuasive than the First Circuit's broader interpretation in *Westerman* (identity of parties is not required).[12]  Based on a *de novo* review of the law on preclusion, in light of the rules of statutory interpretation set forth below, I reach the opposite conclusion.

### *Statutory Interpretation*

The starting point in the interpretation of any statute is the language of the statute itself.  What a legislature says in the text of a statute is considered the best evidence of its intent and will.  *Mayeux v. Charlet*, 16-1463 (La. 10/28/16), 203 So.3d 1030, 1036.  It is a basic principle of statutory construction that the legislature is presumed to have intended every word and phrase included in a statute to have some meaning and that none was inserted by accident.  *ABL Management, Inc. v. Board of Sup'rs of Southern University*, 00-0798 (La. 11/28/00), 773 So.2d 131, 135.  Conversely, it is not presumed that the legislature inserted idle, meaningless or superfluous language in a statute or that it intended any part of the statute to be meaningless, redundant or useless.  *Id.*

When a law is clear and unambiguous and its application does not lead to absurd consequences, the law must be applied as written and no further interpretation may be made in search of the intent of the legislature.  La. C.C. art. 9.  When the wording of a statute is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.  La. R.S. 1:4.

Laws on the same subject matter must be interpreted in reference to each other.  La. C.C. art. 13.  However, the fact that different provisions of law are related does not necessarily mean that they are synonymous or identical in scope.  *Jacobs v. Louisiana Farm Bureau Ins. Companies*, 01-837 (La. App. 3d Cir. 12/19/01), 815 So.2d 858, 862, *writ denied*, 02-0193 (La. 3/28/02), 811 So.2d 946, cited with approval in *Bordelon v. Medical Center of Baton Rouge*, 03-0202 (La. 10/21/03), 871 So.2d 1075, 1080 n. 4.

---

[12] As indicated earlier, in denying the Parish's <u>second</u> exception of no right of action, the trial court held that La. C.C.P. art. 425 does not create a separate and distinct remedy from the principles of *res judicata*.  The court held that Article 425 must be read *in pari materia* with the principles of *res judicata* and therefore required the same identity of parties in the two suits, and because the Parish was not a party to the Orleans Parish suit, Article 425 did not apply to bar this second suit in Jefferson Parish asserting causes of action arising out of the same transaction or occurrence (the alleged asbestos exposure of Thomas Handy, Jr. from 1960 through 2001 at various work sites in both Jefferson and Orleans Parishes) as was also alleged in the Orleans Parish suit.

*Analysis*

Article 425 states that a party "shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation." Unlike the law on *res judicata*, which clearly requires an identity of parties in order for a judgment in one action to bar a second action, Article 425 provides for preclusion when the second action arises from the same transaction or occurrence as the first. The article, as written, does not require that the parties to the two actions be the same in order for one action to be barred by the other.

The analysis of Article 425 in *Westerman* is consistent with the plain wording of the article, which does not require an identity of parties for preclusion to apply. The analysis in *Spires* incorporates that requirement despite the fact that it is not contained in the article as written. Additionally, as noted above, the *Spires* decision relies on dicta concerning Article 425 in the *Walker* and *Gaspard* cases.

The court in *Westerman* discussed the legislative history of Article 425 and construed it in conjunction with the principles of *res judicata* but did not treat the two as identical or synonymous. The contrary construction equating preclusion under 425 with *res judicata* by requiring an identity of parties renders Article 425 superfluous.

The trial court appears to have concluded that the First Circuit's decision in *Butler* reflects the court's disagreement with or departure from its earlier analysis of the law in *Westerman*. I do not read the *Butler* decision as a departure from *Westerman* except to the extent specifically stated in the opinion, i.e., *Butler* involved a reservation of rights and *Westerman* did not. The *Butler* opinion includes language from *Walker* and *Gaspard* equating Article 425 preclusion with *res judicata*, but the *Butler* court did not base its ruling that the second action could proceed on the fact that the parties to the two actions were not the same.

The purpose of the 1990 amendment of Article 425, as set forth in *Westerman*, was to expand the scope of the law to require the plaintiff to assert, in one proceeding, all causes of action arising from the same transaction or occurrence giving rise to the earlier proceeding even if those causes of action are based on different legal obligations (i.e., one obligation founded in tort and another in contract). *Westerman* gave effect to the article as written and has not been overruled or abrogated by the First Circuit or by the Louisiana Supreme Court. The analysis in *Westerman* is consistent with the article's purpose of preventing relitigation of issues already dealt with by the courts to maximize judicial economy and minimize conflicting judgments and to prevent harassment, delay and unnecessary expense to a defendant.

To the extent that this particular law could be rewritten to apply only when the two actions involve the same parties, I do not believe that it is within a court's purview to undertake such a task. Under our constitution, it is not the function of a court to create legislation, but rather to interpret it. *Tullier v. Tullier*, 464 So.2d 278, 282 (La. 1985). Any endeavor to change the law must originate from the legislature.

*Eads Operating Company, Inc. v. Thompson*, 93-2155 (La. App. 1 Cir. 10/7/94), 646 So.2d 948, 955[,] *writ denied*, 95-0226 (La. 4/7/95), 652 So.2d 1345.  If the wording of a statute is not ambiguous but the legislature erred in expressing its intention, any such error should be corrected by the legislature.  *Rada v. Administrator, Division of Employment Security*, 319 So.2d 460, 463 (La. App. 4 Cir. 1975), *writ denied*, 323 So.2d 128 (La. 1975).

***Same Transaction or Occurrence?***

The determination as to whether different claims are part of the same "transaction or occurrence," as that term is used in Article 425 and at least six other articles in the Code of Civil Procedure, is made on a case-by-case basis.  *Zen-Noh Grain Corp. v. Thompson*, 13-110 (La. App. 5 Cir. 8/27/13), 123 So.3d 777, 779; *Hy-Octane Investments, Ltd. v. G & B Oil Products, Inc.*, 97-28 (La. App. 3 Cir. 10/29/97), 702 So.2d 1057, 1060.  While both of those cases arose in a different procedural context involving the use of the same term (exceptions of *lis pendens*), their analysis of the term's meaning is relevant here:

> Although none of these articles specifically define the expression "transaction or occurrence," they variously equate the term with "the subject matter of the litigation" (Articles 425 & 891), "the subject matter of the principal action" or "principal demand" (Article 1061 & 4845) and "the subject matter either of the original action or a reconventional demand or relating to any property that is the subject matter of the original action" (Article 1071).  …
>
> … Among the definitions of "transaction or occurrence" found in 42 Words and Phrases, Supp. p. 201 (1997), is "whether pertinent facts of different claims are so logically related that issues of judicial economy and fairness mandate that all issues be tried in one suit."  …

*Zen-Noh Grain Corp.*, 123 So.3d at 778-779, quoting from *Hy-Octane Investments*, 702 So.2d at 1060.

In this case, the plaintiffs alleged in both the Orleans Parish petition (with 36 defendants) and the Jefferson Parish petition (with the Parish as the sole defendant) that Thomas Handy, Jr. "was routinely exposed to and breathed asbestos dust and fibers during his career" with "R. J. LaHoste Company from 1960 to 1974 and C.J. Calamia Construction Company, Inc. from 1974 until 2001"; that he was involved in numerous municipal projects in the Parishes of Orleans and Jefferson at various times during the course of his employment, as well as other projects for private entities; and that his "malignant adenocarcinoma was caused by injuries and damages to his person that he received from his substantial occupational exposure to asbestos between 1960 and 2001."

Each petition names a few specific locations in which Handy worked in the parish where the lawsuit was filed (Orleans or Jefferson), with no dates specified, and alleges that Handy

participated in "many municipal projects … during his career." Neither petition alleges any further details concerning where or when Handy worked on the municipal projects.

Notably, although the Parish of Jefferson was not named as a defendant in the Orleans Parish lawsuit, the Orleans Parish petition contains allegations concerning the Parish of Jefferson's role in Handy's alleged injuries:

- Orleans and Jefferson Parishes required contractors to use asbestos-cement pipe on Parish properties during the relevant time period [1960 to 2001] and specified that asbestos-cement pipe was to be used on private lands before the adjacent or overlying roads, streets, and pipes were dedicated to the Parishes;

- Industry, lawsuits filed in Jefferson Parish Court, and neighborhood complaints about Johns-Manville's asbestos-cement pipe factory in Marrero, LA placed Jefferson Parish on notice about the hazards of asbestos long before the Parish provided warnings to contractors and long before the Parish stopped requiring asbestos-cement pipe to be installed on Parish land;

- One of the private companies named as a defendant in the Orleans Parish action produced asbestos-cement pipe, compounds and sealing materials used by municipalities in the United States and sold thousands of feet of asbestos-cement pipe to one of Handy's employers and delivered tens of thousands of feet of asbestos-cement pipe to the New Orleans area for use in Orleans and Jefferson Parishes; and

- Four other private companies named as defendants in the Orleans Parish action manufactured and/or distributed asbestos-containing product and sold them to Handy's employers and Jefferson Parish during the time period relevant to Mr. Handy's exposure [1960 to 2001].

(Bracketed material added.)

These allegations also appear in the Jefferson Parish petition.

Based on the allegations in the two petitions, I conclude that the plaintiffs' claims against the Parish of Jefferson arise from the same transaction or occurrence that is the subject matter of the Orleans Parish litigation. The claims in Orleans and Jefferson Parishes are so logically related that issues of judicial economy and fairness mandate that all issues be tried in one suit. *Zen-Noh Grain Corp.*, 123 So.3d at 779; *Hy-Octane Investments*, 702 So.2d at 1060.

***Exceptions to Article 425***[13]

The Fourth Circuit Court of Appeal has held that where no single court has jurisdiction over all defendants, such as when the plaintiff asserts claims for long-term, continuing asbestos exposure against defendants from different states, the joinder rule of Article 425 will yield to the interests of justice, and the plaintiff may bring separate actions without waiving his claims against the defendants who are not amenable to jurisdiction in the "chosen" court. *Breaux v. Avondale Industries, Inc.*, 842 So.2d at 1123.

At the hearing on the [first] exception in this case, plaintiffs' counsel stated that plaintiffs could not have brought the action against all defendants in either parish because the Parish of Orleans could only be sued in Orleans Parish and the Parish of Jefferson could only be sued in Jefferson Parish, pursuant to La. R.S. 13:5104, which requires that a political subdivision of the state be sued in the judicial district where it is located.

It is unclear from the limited record before us whether the Parish of Orleans was named as a defendant in the Orleans Parish lawsuit.[14] [15] If it was, the law would clearly allow the Parish of Jefferson to be sued in Orleans Parish as well. As noted above, the Louisiana Supreme Court has held that otherwise properly cumulated actions against two political subdivisions located in different parishes, arising out of the same transaction or occurrence, may be brought in either parish, despite the requirement of La. R.S. 13:5104 that a political subdivision of the state must be sued in the judicial district where it is located. *Underwood v. Lane Memorial Hosp.*, 714 So.2d at 719-720.

The exception in *Underwood* would not apply if the Parish of Orleans was not named as a defendant in the Orleans Parish lawsuit. However, plaintiffs did not assert that any of the other defendants named in the Orleans Parish lawsuit could not have been sued in Jefferson Parish, nor did they offer any evidence of a reservation of rights in the Orleans Parish lawsuit that would have preserved their right to proceed against the Parish of Jefferson.

***Conclusion***

The documents filed in support of the exception of no right of action establish that the plaintiffs' cause of action against the Parish of

---

[13] This particular section of Judge Molaison's original dissent is included herein for the sake of completeness; however, this section is no longer pertinent to our analysis of this writ application because plaintiffs clarified and admitted, at the hearing on the exception on January 28, 2020, that the Parish of Orleans was never made a defendant in the Orleans Parish suit. Therefore, it has now been determined that these particular exceptions to Article 425 are not determinative of the issue before this Court at this juncture.

[14] The Parish of Orleans was not named as a defendant in the original petition. At the hearing on the exception, plaintiffs' counsel stated that the Parish of Orleans was added as a defendant in an amended petition, but the Parish of Jefferson disputed the accuracy of that assertion, and the amended petition is not in the record before us. [Footnote in the original dissent.]

[15] As indicated earlier, at the hearing on the second exception, the parties clarified that the Parish of Orleans was not named as a defendant in the Orleans Parish suit.

Jefferson arose from the same transaction or occurrence as their causes of action against other parties in the Orleans Parish lawsuit.[16] This was sufficient to trigger the application of Article 425. Plaintiffs did not present any evidence or legal authority that would overcome the requirement to bring all causes of action arising from the same transaction or occurrence in one lawsuit.

Under the circumstances presented, it would be unduly burdensome to the Parish of Jefferson and a drain on court resources to require the Parish to relitigate the issues of fault and causation that were addressed in a separate lawsuit to which it was not a party.

Accordingly, I would reverse the trial court judgment denying the Parish's exception of no right of action, grant the exception, and dismiss the action with prejudice.

*Handy, et al. v. The Parish of Jefferson*, 19-210 (La. App. 5 Cir. 1/6/20) (unpublished writ disposition, dissent of Molaison, J.).

Finally, we find no merit to plaintiffs' position as stated in their opposition to this writ application that their act of filing the two suits in the two jurisdictions (Orleans Parish and Jefferson Parish) on the same day constitutes a "reservation of rights" against the Parish of Jefferson, as that term is understood in law and the cases of *Breaux v. Avondale Industries*, *supra*; *Butler*, *supra*; and *Honeycutt v. Town of Boyce*, *supra*.

## CONCLUSION

For the foregoing reasons, including the above-quoted analysis by Judge Molaison in his dissent as adopted herein, upon *de novo* review, we find that the trial court erred when it held that La. C.C.P. art. 425 is to be read *in pari materia* with the identity of parties requirement found explicitly in the principles of *res judicata*. We find that the First Circuit's interpretation of Article 425 in *Westerman*, rather than the interpretations of the Third Circuit and Louisiana federal district courts, follows the legislature's instructions to courts engaged in interpreting legislation as found in La. C.C. art. 9 and La. R.S. 1:4. Accordingly, we reverse the trial court judgment denying the Parish's exception of no right of

---

[16] As indicated earlier, at the hearing on the second exception, the Parish's documentary evidence was properly introduced and accepted by the trial court.

20-C-122                                15

action, grant the exception, and dismiss the action with prejudice.  As the matter has been fully and extensively argued in brief, we also deny plaintiffs' request for oral argument contained in plaintiffs' opposition to the writ application.

**WRIT GRANTED; EXCEPTION OF NO CAUSE OF ACTION GRANTED; SUIT DISMISSED WITH PREJUDICE; REQUEST FOR ORAL ARGUMENT DENIED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JUNE 1, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**20-C-122**

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
ERIN BRUCE SAUCIER (RESPONDENT)      MATTHEW D. MOGHIS (RELATOR)      MICHAEL S. FUTRELL (RELATOR)

### MAILED

CALEB H. DIDRIKSEN, III (RESPONDENT)
ATTORNEY AT LAW
3114 CANAL STREET
NEW ORLEANS, LA 70119